## COLUMBIA HEIGHTS REALTY COMPANY *v.* MACFARLAND.*

---

AFFIDAVITS; EMINENT DOMAIN; ESTOPPEL; TRIAL; JURY; STATUTE OF LIMITATIONS; FORMER ADJUDICATIONS; ASSESSMENTS FOR DAMAGES AND BENEFITS; DIMINUTION OF RECORD; APPEALS.

1. An affidavit in a cause cannot be considered on appeal when it contradicts the record.

---

*Public Improvements—Assessments.*—For necessity of special benefit to sustain assessment for local improvement, see note to *Re Madera Irrig. Dist. Bonds,* 14 L.R.A. 755.

2. Where, in condemnation proceedings for the extension of a street, it is claimed by a property owner that an act of Congress, passed pending the proceedings, superseded the act under which they were brought, and thereafter they are continued under the later act, he is thereafter estopped to object to an award against him on the ground that the second act did not supersede the first.   Having made his election, he is bound by it. (Following *Clark* v. *Barber*, 21 App. D. C. 274.)

3. Error cannot properly be assigned by a respondent in condemnation proceedings, based upon the fact that the lower court had proceeded after an appeal had been noted by the petitioners from an order of that court, when it appears that the petitioners had abandoned such appeal by filing an amended petition thereafter and prosecuting the proceedings thereunder.

4. Where a respondent in condemnation proceedings had notice of the time when the jury was impaneled and sworn, and an opportunity to examine them, of which he did not avail himself, the refusal by the court thereafter to allow him to examine them as to their qualifications, and refusal by the court to discharge the jury on his motion, is not error.

5. The canvassing of a list of names of proposed jurymen in condemnation proceedings by the marshal, with his chief deputy, after which the marshal makes his selections, is not illegal or improper on his part, and does not show irregularity in the selection or summons of the jury.

6. Where an amended petition in condemnation proceedings is filed as a continuation of the same proceedings under a statute passed pending the proceedings,—claimed by one of the respondents to have superseded the statute under which the proceedings were instituted,—and in obedience to an order of court obtained by the respondent on that theory, a plea of the statute of limitations by the respondent to the amended petition, on the ground that the right asserted therein did not accrue within three years before the same was filed, is properly overruled, even if there is any limitation in such proceedings, not imposed by the statute authorizing them.

7. Where, in condemnation proceedings, a verdict separately finding damages and benefits to the land is confirmed as to damages and vacated as to benefits, it is conclusive as to the damages, but the benefits may be reassessed; and a plea of *res judicata* to an amended petition to reassess the benefits is properly overruled.

8. Where a party acquires title to land while it is involved in condemnation proceedings, he takes subject thereto and is bound thereby. (Following *Wilkinson* v. *District of Columbia*, 22 App. D. C. 289, and *Buchanan* v. *Macfarland, ante,* 6.)

Vol. XXXI.—8.

9. Where the purpose of condemnation proceedings is to open and grade a street, and damages have been awarded as the result of such opening for use, it is proper to assess the benefits accruing therefrom also.

10. Instructions to the jury in condemnation proceedings to extend a street, reviewed, and *held* not to be erroneous.

11. Congress, in the exercise of its taxing power for the establishment and widening of streets in the city of Washington, has the power to require the expense of the same to be taxed against all property to be benefited, generally or in a defined district.

12. A statute for the condemnation of land for street-extension purposes, requiring one half of the cost to be assessed as damages against land within a certain area; and a subsequent statute extending the area of land so to be assessed,—are proper exercise of the power of Congress. (Construing acts of Congress of March 3, 1899 [30 Stat. at L. 1344, chap. 431], and June 6, 1900 [31 Stat. at L. 665, chap. 809, § 12].)

13. A bill of exceptions in condemnation proceedings will not authorize inquiry by the appellate court as to the competency, sufficiency, and weight of the evidence, when it fails to recite the evidence taken before the jury, or to present an agreed statement of facts, but recites certain evidence which purports not to be the evidence actually given, but to be the evidence as presented to the lower court in the form of an affidavit of the stenographer, and elsewhere states that it contains an abstract made by the appellant from such affidavit, and that the court declined to hear the same.

14. Where the ground of objection is that the verdict is unsupported by the evidence, the bill of exceptions must show upon its face that it contains the substance of all the evidence given in the case.

15. An application for the writ of certiorari, made upon the suggestion of a diminution of the record, to bring up a transcript of the entire report of the evidence, sworn to be on file in the lower court, and make it a part of the record, will be denied, where it does not appear that the report was used in evidence on the hearing of the exceptions to the verdict and presented by bill of exceptions.

16. Where, in condemnation proceedings, the jury viewed the premises and heard the witnesses out of the presence of the lower court, this court will not, on an appeal from an order confirming the award of the jury, consider the evidence, unless it is shown that the jury were guilty of apparent misconduct or plain mistake.

No. 1833.  Submitted March 5, 1908.  Decided March 31, 1908.

HEARING on an appeal by one of several property owners from an order of the Supreme Court of the District of Columbia confirming an award of a jury in condemnation proceedings.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is a proceeding for the condemnation of land for the extension of Eleventh street, N. W., in the city of Washington, from Florida avenue northward to Lydecker avenue, begun by a petition filed by the commissioners of the District, in the supreme court of the District, on May 31, 1899.

The proceeding was commenced under the authority of an act of Congress approved March 3, 1899.

A jury of seven men was summoned, and, after hearing, returned a verdict on February 20, 1900, assessing damages for the lands taken and damaged, as well as benefits, to the extent of one half of the total damage, against certain lots within the boundaries created by the act, on account of the opening of the street. Exceptions were filed to this verdict by John Sherman and A. M. Hoyt, so far as it assessed benefits against their property. As is shown by other appeals, other owners also excepted. July 3, 1900, one of the justices of the supreme court of the District confirmed the report or verdict as to damages for the lands taken, and set it aside as to the benefits assessed. The order declaring the assessment for benefits void was in pursuance of a decision of this court in another condemnation case of *Davidson* v. *Wight,* 16 App. D. C. 371. The commissioners appealed from the decision so far as it vacated the assessment of benefits in a case entitled *Macfarland* v. *Byrnes,* et al. While the case was depending, an appeal to the Supreme Court of the United States reversed the decision in *Davidson* v. *Wight,* See 181 U. S. 371, 45 L. ed. 900, 21 Sup. Ct. Rep. 616. In accordance with this last decision as regards the legality of the assessment of benefits, the order vacating the verdict as to benefits was reversed, July 22, 1903,

and the cause remanded for further proceedings. *Macfarland*
v. *Byrnes,* 19 App. D. C. 531.

On March 4, 1904, upon consideration of the mandate of
this court, and a motion of the commissioners to confirm the
said verdict, the court overruled the motion and entered an
order vacating the assessments and directing that the commis-
sioners might apply within a reasonable time for a jury of
twelve to make another assessment. This followed the rule
laid down by this court in construing the provisions of the
act of March 3, 1899, as the proper one where exceptions had
been made and not withdrawn. See *Brown* v. *Macfarland,* 19
App. D. C. 525.

On June 17, 1904, a motion was filed by the attorney rep-
resenting the appellant in this case, and other owners, and by
Samuel Maddox representing some other landowners, to dis-
miss the suit "as to any further proceedings in this cause, be-
cause the law under which such proceedings must be had has
been repealed;" and, second, for the failure of the commis-
sioners to proceed as required by the order of March 4, 1904.
The act referred to as repealing the act of March 3, 1899, is
that of June 6, 1900 (31 Stat. at L. 665, chap. 809, sec. 12).
That was an act for the extension of Columbia road, and for
other purposes. Section 12 of that act made its secs. 3, 4, 5,
6, 7, 8, and 11 applicable to the former act for the exten-
sion of Eleventh street. These sections provided a some-
what different proceeding from that of the former act. Sec-
tion 6 provided that, in case the verdict or award shall be va-
cated, a new jury shall be summoned, which jury is named in
sec. 4 as consisting of seven men. Section 8 corrected the
omission of the former act to provide time for payment of the
instalments of benefits assessed, and permitted amendments of
petition, process, records, proceedings, and descriptions of prop-
erty. Section 12, in addition to making other sections ap-
plicable as aforesaid, authorized the District commissioners
to apply for the final ratification of the awards made for ex-
tension of eleventh street, and concluded thus: "And, in the
event that the assessments for benefits levied by the jury in re-

lation to said Eleventh street shall, for any reason, be declared
void, the said commissioners of the District of Columbia are
authorized and directed to make application to said court for
a reassessment of such benefits under and in accordance with
the provisions of this act." On the same day that the motion
above recited was filed, June 17, 1904, it was ordered by the
court: "Upon consideration of the proceedings herein and
the motion filed by Abner Greenleaf and others," on that day,
that the petitioners in the above-entitled cause, within sixty
days from the date hereof, proceed in the matter of the reas-
sessment of benefits herein in accordance with the terms and
provisions of the act of Congress approved June 6, 1900.

On August 9, 1904, the commissioners filed an amended and
supplemental petition in which they stated briefly the previous
proceedings in the case, including the order aforesaid, and
prayed for notice to be given, and the appointment of a new
jury of seven to reassess the said benefits. After publication of
notice, the new jury was impaneled, which thereafter proceeded
to view the property and hear evidence. Their verdict or
award was filed June 6, 1906. The appellants filed excep-
tions to the award and moved to vacate it upon several grounds
which will appear later.

On February 5, 1907, Leo Simmons, as attorney for the
objectors and present appellants, filed an affidavit, relating to
the motion heretofore recited that had been signed by him and
other counsel, and on which the order to proceed under the
act of June 6, 1900, was founded, in which he stated that
he had served a copy of said motion upon opposing counsel,
but did not file the original, intending to file it at the hear-
ing; that opposing counsel came into court on the day as
notified, and had with him an order prepared, expressing his
willingness to proceed in accordance therewith; that he, Sim-
mons, objected to the said order being signed; that no hear-
ing was had, and the question whether or not proceedings
should be had under the act of 1900 was not argued; that the
justice suggested that any objection he might wish to make
could be taken advantage of in the future; that affiant asked that

notice be given of the amended petition, which was promised, and nothing more was said. The justice signing the order did not hear the case on the final proceedings. He gave a certificate, which was filed with the affidavit, to the effect that his recollection was that, when he signed the order, there was no discussion as to the act under which procedure should be pursued; and that he had no remembrance of Mr. Simmons consenting to the order.

It appears from the bill of exceptions that in February, 1906, the appellants moved to strike out the amended and supplemental petition filed August 9, 1904, because filed without authority of law, because not in accordance with the former order; and because, if the proceeding is to be prosecuted under the act of June 6, 1900, it must be a new one. The motion was overruled and exception noted.

This motion was renewed and again denied March 6, 1906. The appellants then filed a plea to said petition of the bar of the statute of limitations, because the right asserted therein did not accrue within three years next before filing the same. Another plea alleged that the former adjudication had settled the right to the assessment of benefits adversely to the claim of the petitioners. It further appears that notice to the seven jurors, signed by the marshal, had been served by his deputies upon each of them. Next appears an order of the court impaneling the jurors as summoned, and directing them to proceed with the assessment under the provisions of the act of June 6, 1900, as had been before determined. Notice was given to the counsel for appellants, which contained the names of the jurors selected, of the date set for impaneling the jury, but he failed to appear before the same was done. Whether counsel for other interested parties were present does not appear. The jurors appeared, and, without being examined as to their qualifications, were regularly sworn. After the jury had been impaneled and sworn, counsel for appellants undertook to examine them as to their qualifications, and excepted to the denial of his right. At the request of the petitioners, the court gave the following instruction to the jury:

"It is the duty of the jury to consider and assess the benefits which have resulted to the pieces or parcels of land on each side of Eleventh street, northwest, as extended from Florida avenue to Lydecker avenue, and the benefits which have resulted to any and all other pieces or parcels of land from the extension; and, in determining the amounts to be so assessed against said pieces or parcels of land, the jury shall take into consideration the respective situations of the said pieces or parcels of land, and the benefits that they have severally received from said extension of Eleventh street. By extension of the street the jury are to understand its establishment, laying out, and completion for all the ordinary uses of a public thoroughfare, or highway."

Appellants excepted to this instruction on the ground that the extension could not mean the completion of the street for all ordinary purposes of a public highway; that the jury had no right to assess benefits beyond the line of 200 feet from the street to be opened.

The court then proceeded to further instruct the jury as follows:

"1. The jury are instructed that, in ascertaining whether any benefit has accrued to any piece or parcel of land abutting upon or within the vicinity of Eleventh street extended, they shall not take into consideration any benefit that they find which has accrued to the land in question subsequent to the extension of said street. Therefore, in order to levy an assessment for benefits against any piece or parcel of land abutting upon said street or adjacent thereto, the jury must find that the benefits upon which such assessment is based were brought about by the extension of said street, and not by any improvement made since it was extended, or by extension of car line in said street.

"2. The jury is further instructed that they are not bound to levy any assessment whatever for benefits in this case, unless they find the property so assessed actually benefited by enhancement in value, and that such benefit accrued immediately from the extension of the street in question.

"3. And, in establishing such benefits, in case they shall find any, they shall take into consideration the damage done to any piece or parcel of land abutting said street or adjacent thereto by reason of leaving the same above the established grade thereof; that is to say, if they should find any piece or parcel of land benefited by laying out and opening of said street, and shall also find that, by reason of the grade of said street being fixed at a point much below the level of such ground, and that such ground by reason thereof is left far above the said street grade, so as to cause damage on account of grading same, they shall take such grading into consideration, and, if they find that the damage so sustained exceeds the benefits accruing, as formerly instructed, they shall not assess such piece or parcel of land at all; and, in considering the benefits, and the damages caused by change of grade in extension of said street, the jury should take into [consideration] the amount allowed, if any, for damages, by reason of such change of grade, by the former jury which assessed damages.

"4. The jury are instructed that they are not at liberty to levy any assessment against any piece or parcel of land abutting upon or adjacent to said Eleventh street, unless they find such piece or parcel of land benefited by actual enhancement in value immediately upon the opening and extension of said street; and, in considering whether or not any piece or parcel of land has enhanced in value, they have no right to consider any increase or enhancement in value that is the result of any special improvement made upon the street after it was opened and established, as previously stated; neither have they the right to take into consideration any special improvement made upon any street crossing said Eleventh street."

The appellant offered the following prayers for instructions, which were refused:

"1. The jury are instructed that, in ascertaining whether or not any benefit has accrued to any piece of land abutting upon Eleventh street extended, or in the vicinity thereof, they shall not take into consideration any benefit which they may find had accrued to such land subsequent to the laying out and estab-

lishing of said street. That is to say, that, in laying assessments for benefits, if the jury shall find any, they shall not take into consideration the grading or paving of the street, nor any improvements or street-car facilities thereon subsequent to the laying out of the street. In other words, the jury must find that the benefit upon which an assessment was based, was the direct result of laying out and establishing the street, and not the result of improvements since made, either in or upon the street itself, or abutting upon nearby lands.

"2. Such special improvements as water mains, sewers, curbs, gutters, and sidewalks are usually assessed in other proceedings; and, of course, any enhancement in value arising from that character of improvement and the macadamizing of the street in question, or any street crossing the same, should not be taken into consideration as a basis of benefit in this case.

"3. The said jury is further instructed that, in estimating what benefits, if any, have accrued to any piece or parcel of land abutting upon or adjacent to said Eleventh street, they are not at liberty to take into consideration any enhancement in value or benefit that has been given or accrued to such land by the grading of such street or macadamizing the roadway of same; nor have they the right to base their assessment for benefits upon any enhancement in value, if they find any, brought about by the laying of sidewalks, sewers, water mains, gutters, and curbs, that have been placed in or upon said street; their sole right to levy an assessment against any piece or parcel of land must be founded upon such benefits, if any, as have accrued to the land from the extension of the street only. And what is meant by extension is the condemnation of the land for public uses and locating said street by demarcations and boundaries and placing same upon the maps and plans of the District of Columbia, as a public highway.

"4. The jury is instructed that what is meant by 'benefits,' is not such benefits as accrue to the public generally, but such benefits as will actually enhance the value of the property; and if, from the evidence, they find that any piece or parcel of land abutting upon said street, or adjacent thereto, has depreciated in

value since the extension of said street, instead of enhancing it or increasing it in value, then they are not at liberty to levy any assessment against same.

"5. The jurymen are further instructed that the burden is upon the petitioners, the commissioners of the District of Columbia, to satisfy you that any piece or parcel of land has in fact been benefited by enhancement in value from the extension of said street. That every presumption of law growing out of their proceedings should be resolved in favor of the person whose land is liable to assessment. And therefore if any doubt should be met with, caused by reason of delay in prosecuting these proceedings, as to whether or not any piece or parcel of land was in fact benefited by the extension of said street and at the time it was extended, such doubt should be resolved in favor of such property owner and against the District of Columbia."

Appellant then moved the court to discharge the jury because the members thereof had not been selected and summoned as required by law. This was overruled. The bill of exceptions then proceeds to recite: "The following, purporting to be the substance of the evidence before the jury, which evidence was presented to the court in the form of an affidavit by the stenographer, after the verdict was returned and exceptions being heard." This is followed by a statement of evidence as disclosed by said affidavit, together with certain other affidavits relating to other proceedings in the case.

The concluding recital of the bill relating to this evidence reads as follows: "The foregoing substance of the testimony taken before the said jury was abstracted by the appellant from the testimony filed as an affidavit in the case by order of the court. After the counsel had argued the case upon the propositions of the law raised by the exceptions, counsel for the appellant, in support of its motions and exceptions, offered to read to the court the said testimony, but the court declined to hear the same or consider it at the time in full, counsel saying that it would be his purpose to consider the same if the court found, after consideration, the propositions of law were against the ap-

pellant. But counsel had no further opportunity to argue said case on the evidence, and, without reading the evidence, or hearing it fully read, the court passed an order overruling all the exceptions, and confirming said verdict, and refused to consider said testimony any further; and the appellant excepted."

The bill of exceptions also recites the objections of the appellant to the confirmation of the award or verdict. It is unnecessary to repeat these as such of them as are relied on will appear on the assignment of errors.

*Mr. Leo Simmons* for the appellant.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. James Francis Smith,* Assistant, for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first error assigned relates to the action of the court in ordering the proceeding to be continued under the provision of the act of June 6, 1900, instead of under the act of March 3, 1899.

The substantial difference between the two acts is that the former would require the new assessment to be made by a jury of twelve, while the latter limits the number to seven. The second, responding to a suggestion made by the court in *Todd v. Macfarland,* 20 App. D. C. 176, 184, cures the defect in the former relating to the payment of the assessed benefits in certain instalments. The latter contains no limit of the area of the assessment, while the former does.

We regard it as unnecessary to consider whether the later act was intended to supersede the former entirely as regards the reassessment of benefits under the proceeding pending when the same was approved. The appellant and others interested were apparently of the opinion that it did so, as is shown by their motion of June 17, 1904. The opposing parties accepting that view as correct, the court made the order on that day,

and the proceedings were continued in accordance therewith, resulting in the verdict returned June 6, 1906, the confirmation of which is the subject of the appeal.    No objection was raised to the new order of procedure until a late hour in the proceedings.    The objection appears for the first time in the affidavit of Leo Simmons, filed February 5, 1907, which is recited in the preliminary statement of the case.    This affidavit, which does not appear to have been acted upon by the court, unless it may be embraced in the final act of confirmation, fails to show that the order of procedure was not his own conception, or that the motion had not been in fact filed.    But, were it more definite in its statement, it cannot be received to contradict the record. Having suggested the procedure under the later act, and carried on the litigation, without objection, in accordance therewith, the appellant is estopped to object to the verdict on the ground alleged.    Having made his election, he is bound by it.    *Bank of Iron Gate* v. *Brady,* 184 U. S. 665, 668, 46 L. ed. 739, 740, 22 Sup. Ct. Rep. 529; *Davis* v. *Wakelee,* 156 U. S. 680, 689, 39 L. ed. 578, 584, 15 Sup. Ct. Rep. 555.; *Robb* v. *Vos,* 155 U. S. 13, 43, 39 L. ed. 52, 63, 15 Sup. Ct. Rep. 4; *Clark* v. *Barber,* 21 App. D. C. 274, 280.

2. The second assignment of error is that "the court erred in proceeding in this case after an appeal was noted by the appellees from the order passed on the 4th of March, 1904, and from the decree of March 9, 1906.    The first appeal referred to is based on the recital of the order of March 4, 1904, in which the court, after the filing of the mandate in this court, overruled a motion of the petitioners to confirm the verdict of the first jury.    The order recites that they excepted and prayed an appeal.    This order was in accordance with the mandate aforesaid.    Whether it could have been appealed from or not is immaterial, as it is plain that no attempt was made to prosecute one.    It is true the commissioners were not required to give an appeal bond, but other steps were necessary.    Instead of taking these, they showed that the intention had been abandoned, by coming in and filing the amended petition and prosecuting

the proceeding.  The record does not show the second appeal referred to.  The assignment of error is without merit.

3. The third assignment relates to the failure of the court as charged to examine the jurymen, and in refusing permission to the counsel for appellant to examine them touching their qualifications.  Counsel had notice of the time when the jury was impaneled and the members sworn, and could have had the opportunity to examine them and present his objections, if any, to each one.  His request to examine them afterwards came too late.  He made no objection to any one of them.

4. The fourth assignment of error is:  "The court erred in refusing to discharge the jury on motion of appellant's counsel."  This motion, referred to in the preliminary statement, was overruled March 31, 1906.

This motion came too late also.  If there was any irregularity in the selection and summons of the jury, it should have been raised before they were impaneled and sworn.  Moreover, the record fails to show that the jurors were not regularly selected and summoned by the marshal.  It appears therefrom that each member selected was notified, by notice signed by the marshal, on February 9, 1906, of his selection, and commanded to appear for service.  In support of his motion, he filed an affidavit of William D. Robinson, chief deputy marshal, to the effect that he had conferences with the marshal concerning the selection of jurors, and that some of the persons selected were suggested by him.  He was unable to say what jurors were suggested by him, but he added that the jurors were finally selected by the marshal from the entire list under consideration, and the notices regularly served.  Assuming that this affidavit might be considered, without so affirming, all that appears therefrom is that the marshal canvassed a list of names with his chief deputy, and then made his selections.  There is nothing illegal or improper in the marshal's conduct.  The selections were his.

5. The fifth assignment is that "the court erred in not hearing and sustaining appellant's plea of the statute of limitations."

We perceive no error in denying the effect of the plea of limitations.  The proceeding was a continuous one; the amend-

ed and supplemental petition was no departure from the case originally begun. It was filed as a continuation of the same proceeding under the later statute, in obedience to the order of the court founded on appellant's motion embodying the view that the further proceedings could be had only under the later act. Moreover, the amended petition of August 9, 1904, was filed within three years after the mandate of this court had been transmitted, on January 22, 1903. And it was not until March 4, 1904, that the order was entered refusing to confirm the assessment of benefits made by the first jury. It is questionable, also, whether there is any limitation in such proceedings unless imposed by the condemnation act itself.

6. The sixth assignment is that "the court erred in not hearing and sustaining appellant's plea of *res judicata*."

This plea was to the effect that the former verdict found that certain remaining parts of lots 1 and 30 in block 27, and lots 1 and 16 in block 28, would be damaged by opening of said street, and the issue is not now whether or not said lots were benefited, as that has been settled. And, further, that the appellant is the holder under grants from the owner of said lots at that time, and petitioners are estopped by said verdict and its confirmation from now asserting that said lots were benefited by the said street extension.

The plea is untenable. The former verdict not only shows that the parts of the lots mentioned were condemned, and part damaged, with the assessments therefor, but also that the remaining parts of the same were found to be benefited to a considerable extent. The former verdict, when confirmed, became conclusive as to the damages, and that question was not attempted to be reopened. The assessment for benefits having been vacated, the single purpose was to reassess the lots therefor. In general proceedings for condemnation, benefits to remaining land are to be set off against damages thereto. When separately stated in the verdicts in cases like this, one finding may be confirmed and the other vacated and opened for another assessment, as provided by the law.

The appellant, having acquired title pending the proceedings,

takes subject thereto, and is bound thereby. *Wilkinson* v. *District of Columbia,* 22 App. D. C. 289, 295; *Buchanan* v. *Macfarland, ante,* 6. Moreover, it was substantially conceded on the argument, that the appellant in this case is a corporation organized for the purpose of taking over and holding the property of the former owner, John Sherman, for the benefit of his devisees.

7. The seventh assignment of error is: "The court erred in granting the first prayer on behalf of the appellees, whereby the court said, by extension of the street the jury was to understand its establishment, laying out, and completion for all ordinary purposes of a public highway; and erred in refusing to grant appellant's five separate prayers for instructions; and, further, erred by said first instruction by saying to the jury that they might assess the benefits which had resulted to any and all other pieces of land from the extension."

(1) This first instruction, copied in the preliminary statement, appears to have been a fair and just one. The purpose of the condemnation proceeding was the opening of Eleventh street for all the ordinary uses of a street. The grade was known and taken into consideration by the jury, which awarded not only the value of the land actually taken, but also the damage done by the reduction of the grade which would compel the grading of the adjacent lots and portions of lots. The purpose being to open and grade the street, and damages having been awarded as the result of said opening for use, it was proper to assess the benefits accruing therefrom also. Any danger, however, that the jury would consider the benefits arising from any other improvements in the street than those above mentioned was entirely removed by the second and fourth instructions. These excluded any future or speculative benefits arising from special improvements in or uses of the street subsequent to condemnation and opening as aforesaid. The benefits arising from the opening of the street, though not immediately realized in full, were so far present as to be certain and ascertainable. All that was proper in the refused instructions is contained in those given.

(2) Assuming that the record shows that assessments for benefits extended beyond the area fixed by the former law, these were made under the act of June 6, 1900, which contains no such limitation, but permitted the assessment to be made against all lands benefited by the street extension. See sec. 6, 31 Stat. at L. 667, chap. 809. Committed, as we have seen, to the procedure under said act, the appellant is bound thereby. Moreover it is not perceived that any injury accrued to the appellant by reason of the extension of the area of benefits. Congress, in the exercise of its taxing power for the establishment and widening of streets, had the power to require the expense of the same to be taxed against all property found to be benefited, generally or in a defined district. *Bauman* v. *Ross,* 167 U. S. 548, 549, 42 L. ed. 270, 274, 17 Sup. Ct. Rep. 966. In this instance it required one half the cost to be assessed, first in a certain district, and later to an area within the limits of actual benefits received. The latter method is the most equitable. Now, as the amount of one half had to be assessed under any conditions, the result of the extension of the area was to relieve the lands within the former fixed area to the extent of benefits assessed against lots situated farther away. That Congress had the power to alleviate the burden imposed by the former law, by extending the assessment to all property actually benefited, at the same time giving all owners an opportunity to be heard before the assessment tribunal, we think cannot be successfully denied.

8. The eighth assignment relates to exceptions taken to the refusal of the court to permit the appellant to have the jurymen examined in order to show that they had not been properly selected and sworn. This question has been disposed of under the third and fourth assignments of error.

9. The ninth assignment of error is: "The court erred in not taking up and considering the evidence and the several objections and exceptions taken thereto before said jury, and the rulings of said jury and objections noted in the record."

It must be remembered that the jury are required to view the premises and then to hear evidence either in the presence of

the court or not, as the court may direct.   31 Stat. at L. 666, chap. 809, sec. 4.   Without objection, the court directed the hearing to be had out of its presence.   Passing by the objection to this assignment of error that it does not specify the particular points of exceptions, but refers to the proceedings as a whole, we think that the bill of exceptions as taken does not authorize inquiry as to the competency of the evidence, or as to its sufficiency and weight as raised by the tenth assignment of error, which has been argued with this on the brief.   It does not recite the evidence as taken before the jury, nor present an agreed statement of the same.   As recited, it purports not to be a transcript of the evidence actually given, but merely an affidavit of the stenographer that it contained the substance of that evidence, which seems to have been preserved.   . And, in conclusion, it is recited that it contains, not this affidavit, but an abstract made by the appellant therefrom; and that the court declined to hear or consider the same.

Where the ground of objection is that the verdict is unsupported by the evidence, the bill of exceptions must show upon its face that it contains the substance of all the evidence given in the case.   We have said that it would seem that a full report of the evidence had been made and filed in the court below, because, in proper time, before the submission of the cause, the appellees made a suggestion of diminution of the record and applied for a certiorari to bring up a transcript of the entire report of the evidence, sworn to be on file in the court below, and make it a part of the record.   The application was denied because it did not appear that the report had been used as evidence on the hearing of the exceptions to the verdict and preserved by bill of exceptions.   Even if the entire evidence were before us, it would be necessary to point out some apparent misconduct or plain mistake on the part of the jury of assessment to authorize its consideration, as they were required to view the premises, and were, therefore, in a situation to know the actual conditions and to test the reasonableness and weight of the evidence.   No such situation was occupied by the court passing on their verdict, as the witnesses were neither seen nor heard by him.   *Shoemaker* v.

*United States,* 147 U. S. 282, 305, 37 L. ed. 170, 187, 13 Sup. Ct. Rep. 361.

Having found no reversible error in the proceedings in the case, we must affirm the judgment with costs.   It is so ordered.

*Affirmed.*

A writ of error to the Supreme Court of the United States, prayed for by the appellant, was allowed April 7, 1908.