# AMERICAN SECURITY & TRUST COMPANY *v.* RUDOLPH.

EMINENT DOMAIN; CONDEMNATION OF LAND; INSTRUCTIONS TO JURY; STATUTES; APPEAL AND ERROR.

1. It is not error for the trial court in instructing the jury in a proceeding by the commissioners of the District of Columbia to condemn land for the extension of New York avenue, as provided for by the act of Congress of February 6, 1909 (35 Stat. at L. 597, chap. 75), which requires the proceeding to be prosecuted in the manner prescribed by subchapter 1, chapter 15, D. C. Code [34 Stat. at L. 151, chap. 2070], to tell them that "by the extension of the avenue the jury are to understand its establishment, laying out, and completion for all the ordinary uses of a public thoroughfare," where the evidence on behalf of the commissioners shows that the amount of the benefits sought to be proved was made to depend upon the assumption that the avenue would be graded and improved so as to make it a usable street, such benefit to result from the owners being able to subdivide their land into lots, sell lots, and build houses upon

their land abutting upon the extended avenue; and that if the extended avenue was not so graded and improved, no benefit would result to the remainder of the land; and where, by reason of oral explanation and other instructions, it is clear that the jury could not have considered or believed themselves as authorized to take into consideration benefits that could only accrue in the future through the paving of the avenue, much less the construction of water mains and sewers thereon. (Following *Columbia Heights Realty Co.* v. *Macfarland,* 31 App. D. C. 112, s. c. 217 U. S. 547, 54 L. ed. 877, 30 Sup. Ct. Rep. 581, 19 A. & E. Ann. Cas. 854.)

2. The laws of Congress as contained in the Code of Laws for the District of Columbia, are not laws of the United States having operation throughout the Union, but are special enactments for the regulation of persons and property in the District of Columbia exclusively. They are local, and not general, laws.

3. The laws as contained in D. C. Code, and in acts of Congress limited in their operation to the District of Columbia, such as acts relating to the condemnation of land for street extension purposes, are not laws of the United States, within the meaning of that provision of sec. 250 of the act of Congress of March 3, 1911 (36 Stat. at L. 1087, chap. 231), known as the Judicial Code, giving the right of appeal from this court to the Supreme Court of the United States in those cases "in which the construction of any law of the United States is drawn into question by the defendant."

No. 2294.  Submitted November 8, 1911.  Decided January 2, 1912.

HEARING on an appeal by property owners from a judgment of the Supreme Court of the District of Columbia, holding a District Court, confirming the verdict of a jury of award in a condemnation proceeding.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment confirming the verdict of a jury in a condemnation proceeding.

A special act of Congress, approved February 6, 1909 (35 Stat. at L. 597, chap. 75), directed the commissioners to institute a proceeding *in rem* to condemn the land necessary for the extension of New York avenue, from its eastern terminus near Fourth street, N. E., to the proposed line of Montana avenue,

and thence to the Bladensburg road. The procedure was diected to be prosecuted under the provisions of subchapter 1 of chapter 15 of the District Code. Section 491g of that chapter reads as follows:—

"That of the amount found to be due and awarded as damages for and in respect of the land to be condemned for said opening, extension, widening, or straightening, plus the costs and expenses of the proceeding, such amount shall be assessed by the jury as benefits, and to the extent of such benefits, against the lots, pieces, or parcels of land on each side of the street, avenue, road, or highway to be opened, extended, widened, or straightened, and against any and all other lots, pieces, or parcels of land which the jury may find will be benefited by the opening, extension, widening, or straightening, as the jury may find said lots, pieces, or parcels of land will be benefited; and in determining the amounts to be assessed against said lots, pieces, or parcels of land, the jury shall take into consideration the respective situations and topographical conditions of said lots, pieces, or parcels of land, and the benefits and advantages they may severally receive from the opening, extension, widening, or straightening of the street, avenue, road, or highway." [34 Stat. at L. 152, chap. 2070.]

Section 491j makes the assessment of benefits a lien on the lant benefited, payable in five equal annual instalments.

The appellants hold the legal title to what is called the Patterson tract of land containing about 92 acres. This tract, on the north, adjoins a tract occupied by railway lines entering the city of Washington. The proposed north line of the avenue coincides with the north line of the tract. The land sought to be condemned is 130 feet in width and about 3,500 feet in length, and comprises about 10½ acres.

To bring the proposed avenue to the required grade would require a fill from 2 feet to 33 feet for about 2,000 linear feet, and a cut or excavation of from 2 to 22 feet for about 1,500 linear feet. It does not appear to what uses the land was then applied, but the map in the record indicates that a small part of the survey or adjacent survey had been laid off in lots. The

jury assessed the entire damage for land taken, in the sum of $64,183.80, and the benefits at $64,893.06. The damages to the appellants were found to be $36,613.50, and their amount of the benefits was assessed at $36,377.95.

The bill of exceptions recites that certain special instructions were prayed by the several parties. The material one prayed by the plaintiffs reads as follows:—

"3. The jury are instructed that after ascertaining the amount of damages to be awarded to the owner of the land to be taken for the extension of New York avenue, from which this proceeding has been instituted, they shall then proceed to assess the full amount of such damages, together with the cost of this proceeding, as benefits and to the extent of such benefits against the lots, pieces, or parcels of land on each side of New York avenue, to be extended, and upon any and all other lots, pieces, or parcels of land which the jury may find will be benefited by the said extension of New York avenue as the jury may find said lots, pieces, or parcels of land will be benefited; and in determining the amounts to be assessed against said lots, pieces, or parcels of land, the jury shall take into consideration the respective situations and topographical conditions of said lots, pieces, or parcels of land and the benefits and advantages they may severally receive from said extension of said avenue. By the extension of the avenue the jury are to understand its establishment, laying out, and completion for all the ordinary uses of a public thoroughfare. The jury are instructed, however, that it is not incumbent on them to assess benefits arbitrarily; they should assess benefits only where they find an actual enhancement in value will accrue to the property by reason of the extension of said avenue."

On behalf of the appellants, the three following were submitted:—

"1. The jury are instructed that there is no provision of law making appropriations for the grading, paving, or otherwise opening to traffic the proposed extension of New York avenue, nor for the laying of water mains or sewers therein; and there is no law that binds the United States or the District of Colum-

bia to make any of such improvements within five years or any other limit of time; and in estimating benefits accruing to the Patterson tract they must disregard any advantage which they may suppose would accrue to said tract if such improvements were in fact made.

"2. The jury are instructed that, in assessing the entire amount of their award, they are at liberty to assess the same ratably against all land within the District of Columbia, other than such as is exempt from taxation; but before assessing any parcel of land as being especially benefited beyond any other parcels in the District, they must find as a fact that such parcel will be actually benefited in some special manner or degree distinct from the advantage which they may find will accrue as a common benefit to all other parcels of land.

"3. The jury are instructed that, in considering the Patterson tract, they must assume that the grade of New York avenue, if improved and open to traffic, will be substantially that shown on the grade sheet and by the testimony of the witness Talcott offered in evidence by the District of Columbia, and in determining what, if any, benefit may accrue to the Patterson tract from the establishment of said highway, they must take into consideration the necessary cost of grading the Patterson tract contiguous to said avenue in a manner to adapt it to the use of said avenue as an abutting highway.

"The jury are instructed in order to find that any parcel of land is especially benefited, as distinct from a general benefit accruing to other lands, they must find either that the fair market value of such parcels of land will be increased, or that such parcel will be made available for some use for which it is now available, by reason of the withdrawal from private ownership of the land taken for New York avenue and its appropriation for public use as a public highway.

Counsel having been called upon by the court in the presence of the jury to state their objections to the proposed instructions, the bill of exceptions recites at some length the suggestions of counsel. The first objection was stated by counsel as follows:—

"To the third prayer on behalf of the District to the words

'by the extension of the street or avenue, the jury are to understand its establishment, laying out, and completion for all the ordinary uses of a public thoroughfare.' Once it has been condemned for the purpose of a public highway, it is established, as far as that is concerned, but the laying out and completion for all ordinary uses of a public thoroughfare, seems to me to imply its physical improvement as a usable road open to traffic. I would object to that feature of the instruction as improper, and I have an instruction directed particularly to that feature of the case, which I would like to bring to your Honor's attention."

Some other objections were made, and among these counsel for plaintiff suggested that the last paragraph of appellant's proposed instruction would be inconsistent with the instruction that had been approved relating to the uses of the street. The court said that it was consistent with the other and the jury would not be misled by it, in connection with the other. To the suggestion of appellants' counsel that "it must be harmonized," the court responded: "They understand there can be no future assessment. I take it they must consider it to be a street for use. So I will grant this if you understand, gentlemen (addressing the jury), that the appropriation to public use means appropriation for use as a street. I grant that without objection, that explanation being given to the jury."

Thereupon the court gave plaintiff's third instruction, with others not objected to. He refused the appellants' first instruction, and gave the other two; all of which are set out above. Exception was taken by the appellants to the third instruction of plaintiff, as noted above, and to the denial of their first instruction. Judgment confirming the report having been entered, the appellants appeal.

*Mr. William G. Johnson* for the appellants.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. J. Francis Smith,* Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Four errors have been assigned, which, as have been stated by counsel: "All converge towards, and culminate in a single point; namely, the question of the correctness of the court's action in refusing to modify the appellees' third prayer, and refusing to grant appellants' first prayer."

The exception to the plaintiff's first prayer was, as we have seen, that, after, directing the jury to take into consideration the benefits and advantages to be derived from the extension of the avenue, the following words were added: "By the extension of the avenue the jury are to understand its establishment, laying out, and completion for all the ordinary uses of a public thoroughfare." The only recital in the bill of exceptions, of the evidence relating to the amount and character of benefits to result from the improvement is the following:—

"Plaintiff also gave evidence tending to show that the portion of said tract to be taken for the extension of said avenue was worth from $3,000 to $4,000 per acre; that the benefit to the remainder of said tract not taken would equal or exceed the value of the land taken upon the assumption that the government would grade and improve said extension of said street so as to make it a usable street; that such benefit would result from being able to subdivide into lots, sell the lots, and build houses upon the land abutting on the extended streets; that if the extended street was not so graded and improved, no benefit would result to the remainder of the land."

The objection to this language of the instruction above quoted is that it "comprehends benefits assumed to result from the street's 'physical improvement as a usable road open to traffic.'" This assumed probability that the jury would misunderstand its meaning was sought to be removed by appellants' first instruction, which the court refused. The instruction called attention to the fact that no appropriation had been made for grading, paving, or otherwise opening the street to traffic, or for the laying of water mains therein; that there is no law binding

the United States or the District of Columbia to make any such improvement within five years, or any other limit of time; and in consideration thereof, directed the jury to disregard any advantage that might be supposed to accrue to the land if such improvements were in fact made. There was no error in giving the instruction number 3, prayed by the plaintiffs. Section 491a of the Code [34 Stat. at L. 151, chap. 2070], regulating condemnation proceedings, authorizes the condemnation of the land needed, for the opening, extension, widening, or straightening of any street, etc. The proceeding here was the extension of an avenue. The words excepted to as defining the meaning of the extension of a street have been approved as correct in an analogous case. *Columbia Heights Realty Co.* v. *Macfarland,* 31 App. D. C. 112–127, s. c. 217 U. S. 547–557, 54 L. ed. 877–881, 30 Sup. Ct. Rep. 581, 19 A. & E. Ann. Cas. 854. As it appeared that the extension would necessarily have to be brought to grade before it could be improved, they were instructed in the second prayer given to the jury for the defendants, that in determining what if any benefit may accrue from the establishment of the highway, they must take into consideration the necessary cost of grading the abutting land in a manner to adapt it to the use of the avenue as an abutting highway. The appellants concede that the foregoing instruction was approved in the case above cited, but contend that this approval was upon the express ground that other instructions given at the same time qualified it, by specifically eliminating from consideration benefits resulting from prospective future improvements of the street after its acquisition by the proceeding for extension. It is quite true that in other parts of the charge in that case the assessment of benefits was limited to such as must accrue "immediately from the extension of the street in question," and could not be based upon any special improvements made since its extension. And these limitations were adverted to in the opinions as entirely overcoming the objections that the jury were not limited to the benefits resulting immediately from the opening of the streets, but might consider benefits that might accrue from subsequent improvements of or upon the street. The limitations

were of special importance in that case, because, during the long delay that had attended the proceeding, the street had been improved and a car line built thereon before the second and final hearing.

Appellants contend that under the instruction given, the jury were likely to understand that "all the ordinary uses of a public thoroughfare" would include all such physical improvements of the street as would make it a completed street for all purposes, which would comprehend its adaptation to the building of houses, which would necessarily require the laying of water mains and sewers. In this connection attention is called to the substance of the evidence heretofore recited. In such cases the evidence is ordinarily heard by the jury, not in the presence of the court, and this, in connection with their personal inspection, is the foundation of their assessment of benefits. While the bill of exceptions does not purport to give the substance of all of the evidence that may have been introduced, it recites enough to show in general the foundations upon which the witnesses' estimates of benefits rested, and to serve as a test of the correctness of the instructions given and refused. It appears therefrom that the amount of the benefit was made to depend upon the assumption that the street would be graded and improved so as to make it a "usable street;" such benefit to result from "being able to subdivide into lots, sell the lots, and build houses upon the land abutting upon the extended street;" and further, "that if the extended street was not so graded and improved, no benefit would result to the remainder of the land."

What is meant by "graded" is plain enough, but what is meant by "improved" is not at all clear. Paving, water mains, and sewers were not mentioned as elements of improvement necessary to the subdivision into lots and the erection of houses; nor, in the light of common knowledge, would it be reasonable to regard them as necessary, preceding improvements. The refused instruction of the appellants not only directed the jury to the fact that no appropriation had been made for grading, but also that none had been made for paving, or the construction of water mains and sewers. For this reason the instruction, as a

whole, was incorrect and its refusal was not error.   The record shows, however, that objection had been made to the instruction given, because it did not limit the meaning of the words, "laying out and completion for all the ordinary uses of a public thoroughfare," so as to exclude therefrom its physical improvement as a usable road open to traffic.   It remains to consider, then, whether this objection was well taken, and sufficient, in connection with the special prayer, to make it the duty of the court to so modify the language of the given instruction as to expressly eliminate from consideration benefits that would result from the future grading, paving, and opening to traffic of the street extension.

On behalf of the appellees, it is contended that this modification of the charge was unnecessary, because it was made so plain that only the benefits resulting from the condemnation of the land for the extension and use as a street were to be taken into consideration, that the jury could not possibly have been misled.   In support of this they call attention to the second instruction given at defendants' request, which directed the jury that, in determining whether the land was specially benefited as distinct from a general benefit accruing to other lands in the neighborhood, they must find that the market value of the defendants' land will be increased or made available for some use for which it is not now available, "by reason of the withdrawal from private use of land taken for New York avenue and its appropriation to public use as a public highway."   In addition, they call attention to the discussion in the presence of the jury, of the objections, which is herein above recited, as specifically informing the jury that the consideration of benefits was limited to those resulting alone from the appropriation to public use of the land needed for the extension of the street.   In the course of this discussion, it will be remembered that the court said there could be no assessment for future benefits, and said —addressing his remarks to the jury—that he would give the instruction objected to, "if you understand, gentlemen, that the appropriation to public use means appropriation for use as a street."   He further said that he granted it with that expla-

nation to the jury.   Under the instruction given at the request of the defendants, the jury were required to take into consideration the expense of making the abutting land conform to the grade established for the street.   This was, in fact, a part of the damage to which they were undoubtedly entitled.   Defendants are, therefore, hardly in a position to object that this grading be considered as an element of benefit resulting from the condemnation of the land for the street extension.   Moreover, in estimating benefits to result from the proposed extension, its established grade was properly considered as both an element of damage and benefit.   *Bauman* v. *Ross,* 167 U. S. 548–587, 42 L. ed. 270–287, 17 Sup. Ct. Rep. 966; *Columbia Heights Realty Co.* v. *Macfarland,* 31 App. D. C. 112–127.

It is unnecessary to follow counsel in their discussion of alleged difference in the meaning of the several words, "extension," "open," "widen," "straighten," used in the condemnation statutes.   Necessarily, condemnation for either purpose must precede grading or any other character of improvement, whether the same be provided for by law at the time or not.   The assessment of damages and benefits must be based on the purposes for which the condemnation proceedings were directed.   This was expressly held in *Bauman* v. *Ross,* supra, a case arising in the District under the statute then in force, providing for the laying out, opening, etc., of streets and highways.   One of the questions considered in that case was the opinion expressed in one of the lower courts, to the effect that the benefits assessed should be confined to those immediately realized, or, at least, so far present as to be certainly and presently ascertainable.

The statute was substantially similar to the present one in so far as the principle governing assessment of benefits is involved.   Discussing some of the terms used in the statute, Mr. Justice Gray said:   They "evidently treat condemnation, establishment, laying out, and opening of a highway as denoting one and the same thing, the appropriation or setting apart of land for a highway and throwing it open to public travel, and have no regard to the actual grading or construction of the highway."   And it was further said:   "The benefits, as well

as the damages, to be taken into consideration, are to be estimated as of the date of such appropriation. The damages assessed as of that date constitute the entire compensation for such appropriation of land for a highway, including all injuries resulting from any change of the natural grade required in the actual construction of the highway." The meaning of the words "extension of the avenue," as defined in the instruction given, is in accord with the doctrine announced in that case. While the learned trial justice, as admitted by himself, in the brief opinion delivered on the motion to set aside the finding of the jury, might have been somewhat more explicit in his instructions, we agree with him that, considering the instructions as a whole, and as explained to the jury orally,—thereby making the explanation a part of his charge,—they could not have considered themselves as authorized to take into consideration benefits that could only accrue in the future through the paving of the street, much less the construction of water mains and sewer therein.

For the reasons given the judgment will be affirmed, with costs.                                          *Affirmed.*

On February 6, 1912, the appellants applied for the allowance of a writ of error to the Supreme Court of the United States.

The application was denied March 4, 1912, Mr. Chief Justice SHEPARD delivering the opinion of the Court:

The matter before us is a petition for a writ of error from the Supreme Court of the United States to review a judgment of this court rendered in the above entitled cause, January 2, 1912.

The recent change in the law regulating appeals from this court has resulted in numerous petitions for writs of error. Two views have been maintained in respect of the intent and effect of the change in the law. One is that it affects a limitation of the right of review. Another is that, while this is its

effect in some respects, it has, nevertheless, marked a wide extension.

The situation in which we find ourselves is an embarrassing one. · Necessarily, the Supreme Court of the United States is the sole judge of its jurisdiction in the premises. "At the same time," as said in passing recently upon the petition of William A. Pierce [*Pierce* v. *United States,* 37 App. D. C. 588], "this court is charged with the duty of determining, in the first instance, whether it shall take the formal prelimi-· nary action that will operate to suspend the execution of its judgment, and transmit the record of its proceedings to the appellate court for review."

Should we decline to exercise this discretion, and grant the petition in every case in which the petitioners claim the right of review, the question of jurisdiction may not be brought before the appellate court, in regular order, for a long period of time during which uncertainty will prevail; and should it be determined finally that the right of review does not exist, the delay will result in hardship to parties entitled to the fruits of successful litigation. For these reasons, as said in passing on Pierce's petition, if, in the opinion of the court, the right to the writ of error is not conferred by the law. it is its duty to decline to take the preliminary action demanded, no matter how important may be the question involved, or how desirous we may be that it should be set at rest by the court of last resort. If we err in such refusal, there is a ready remedy for the error.

With this explanation, we come to the consideration of the question involved.

Subject to an exception in the next to the last clause, section 250 of an Act to Codify, Revise, and Amend the Laws Relating to the Judiciary, Approved March 5, 1911, and taking effect January 1, 1912, provides the absolute right to review the final judgments and decrees of the court of appeals of the District of Columbia in six classes of cases.

The petition is founded on the contention that it presents a case within the sixth class, which confers the right of review

"in cases in which the construction of any law of the United States is drawn in question by the defendant." The case is stated as follows in the petition: "This proceeding in the court below was a wholly statutory one, and was instituted by the appellees against the appellants under two acts of Congress, *viz.:* The special act, approved February 6, 1909 (35 Stat. at L. 597, chap. 75), authorizing the extension of New York avenue, and the general act, approved April 30, 1906 (34 Stat. at L. 151, chap. 2070), known as subchapter 15 of the Code of Law for the District of Columbia." The question is whether the special act for street extension, and provisions of the Civil Code for the District, are laws of the United States within the meaning of the clause before quoted. Congress is the sole legislative body for the Union, and in a broad sense all of its enactments are laws of the United States. But it has two distinct classes of legislative powers. The general function which it was established to perform is the enactment of laws that operate and govern throughout the United States. By virtue of the cession of the District of Columbia, it became invested with special legislative powers therein to the full extent possessed by the state of Maryland before the cession occurred. These powers, as exercised in the Code of Laws for the District and in legislation of the character involved here are local in their nature and purpose, and expressly limited to the boundaries of the District. They are not laws of the United States, having operation throughout the Union, but special enactments for the regulation of persons and property in the District of Columbia exclusively. They are local, and not general. It was known to Congress that many laws of the United States come before the courts of the District of Columbia for construction in cases affecting persons residing, and properly situated, in the different States of the Union. Particularly is this the case in respect of those laws governing the administration of affairs committed to the Departments of the Interior and the Postoffice, the construction of which, in the first instance, is largely devolved upon the courts of the District, because of the maintenance of those departments,

and the residence of their official heads, at the national capitol. The construction of such laws and their operation is of importance throughout the United States, and the importance of preserving uniformity in their construction, and preventing the confusion that might arise from conflicting decisions, was, doubtless, the reason why provision was made for the review of decisions relating thereto. Those reasons do not apply to legislation strictly local in its application. We are of the opinion, therefore, that the laws the construction of which is involved in this case are not laws of the United States within the meaning of the provision before quoted.

To give these words the broad meaning contended for would be to break down a distinction that has always been observed between legislation for the United States, and that having relation to the District of Columbia exclusively. Moreover, the meaning contended for would convert an act generally understood as intended to limit appeals and relieve the overburdened docket of the Supreme Court, into one of an entirely different character. Believing, as we do, that the act and the Code, the construction of which are involved, are not laws of the United States within the meaning of the amended law, we are constrained to *deny the petition.*

An application was made to the Chief Justice of the Supreme Court of the United States, by the appellants, for the allowance of a writ of error to this court. The Chief Justice referred the application to the court, and on April 29, 1912, that court in an opinion written by Mr. Justice Holmes, denied the application.