GUDMUNDSON v. CARDILLO, Deputy Com'r, District of Columbia Compensation District (TRAVELERS INS. CO., Intervenor).

No. 7851.

United States Court of Appeals for the District of Columbia.

Argued Dec. 11, 1941.

Decided Feb. 16, 1942.

522

Mr. Robert A. Wilson, with whom Messrs. Joseph A. Padway and Herbert S. Thatcher, all of Washington, D. C., were on the brief, for appellant.

Mr. Ward E. Boote, Asst. Chief Counsel, United States Employees' Compensation Commission, and Mr. Edwin A. Swingle, with whom Messrs. Edward M. Curran, U. S. Atty., Bernard J. Long, Asst. U. S. Atty., Ernest A. Swingle and Chas. T. Branham, Associate Counsel, all of Washington, D. C., United States Employees' Compensation Commission, were on the brief, for appellees.

Mr. Allan C. Swingle, of Washington, D. C., also entered an appearance for the appellee, Travelers Insurance Company.

Before GRONER, Chief Justice, and STEPHENS and RUTLEDGE, Associate Justices.

GRONER, C. J.

The case is here under the Workmen's Compensation Law of the District of Col-

umbia.[1] The injury was sustained in Bethesda, Maryland, on the 25th of May, 1939. Claim for compensation was made under the Maryland law. An award followed, and the statutory payments began the 29th of May, 1939. On the 4th of March, 1940, appellant (injured) having, perhaps, in the meantime ascertained the more liberal provision of the District of Columbia Act, filed a claim for compensation under that law. There was a hearing before the deputy commissioner May 2, 1940, to determine whether there was jurisdiction to make an award. The deputy thought there was not, and rejected the claim. Following this, appellant filed complaint in the District Court for mandatory injunction, in which he alleged that the order of the deputy was not in accordance with law and was not supported by evidence. He asked that it be set aside and the deputy be required to take jurisdiction. The deputy and the insurance carrier filed motions to dismiss. Appellant then filed an amended complaint which not only questioned the legal sufficiency of the evidence to support the deputy's order, but also prayed that the evidence be reweighed by the District Court in a trial de novo. Neither party desiring to introduce additional evidence, the question was submitted on the record made before the deputy. The District Judge held that appellant was not entitled to an independent evaluation by the court of the evidence, and upon consideration of the record held that there was substantial evidence to support the deputy's findings and order, and thereupon dismissed the complaint.

The error complained of on this appeal is the refusal of the District Court to reweigh the evidence and determine for itself the facts, but counsel—as a sort of anchor to windward—suggest that, in any case, a careful consideration by us of the testimony will show that the findings and conclusion of the deputy are not supported by substantial evidence and should, for that reason, be disregarded and the deputy ordered to make an award.

---

[1] Act of May 17, 1928, c. 612, 45 Stat. 600, D.C.Code 1940, §§ 36—501, 36—502, 33 U.S.C.A. § 901 note, which made applicable to employees in certain employments in the District of Columbia the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, c. 509, 44 Stat. 1424, 33 U.S.C.A. 901 et seq. The Act "shall apply in respect to the injury or death of an employee of an em-

ployer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs; except that in applying such provisions the term 'employer' shall be held to mean every person carrying on any employment in the District of Columbia, and the term 'employee' shall be held to mean every employee of any such person."

This brings us to the facts found. Somewhat abbreviated, they are: that appellant was in the employ of Senn-Herrick Corporation, "a construction company, incorporated in the State of New York; that the said corporation did not maintain an office in the District of Columbia, except a temporary one at the location of a project when engaged in construction work in the District of Columbia; that the claimant has been a resident of the District of Columbia for the past several years; that in his occupation as a carpenter the claimant has been employed by various contractors; that his employment with the said employers was irregular and discontinuous and that he worked from job to job and for first one employer and then another, wherever work was available"; that his first employment with Senn-Herrick Corporation was in 1928 at the Mellon Art Gallery in the District of Columbia. At the conclusion of his work on that job he obtained employment with the McCloskey Company, also in the District; and "while working for the McCloskey Construction Company the claimant was informed by Mr. Link, a co-worker on the McCloskey job, that work at the National Institute of Health, Bethesda, Maryland, would soon be started by * * * Senn-Herrick Corporation". Link thereafter was made foreman of the Bethesda job and "on the following evening * * * called at the claimant's home and told the latter that the work in Bethesda had begun and asked the claimant whether he would like to go work there on the following day; that the claimant reported to the job at Bethesda, Maryland, the next morning, March 1, 1939, and was put to work"; that he continued to work for the employer in Bethesda, Maryland, until his injury; "that at the time of the injury no employment existed in the District of Columbia; that the contract of hire was made in the State of Maryland; that a remedy under the Maryland Compensation Law had been provided the injured employee; that it is, therefore, unlikely that the employee will become a public charge in the District of Columbia; that for the construction work performed in Bethesda, Maryland, the employer was not subject to the provisions of the District of Columbia workmen's compensation law; that the claim for compensation filed by the claimant under the District of Columbia workmen's compensation law is not within the purview of the said law".

Appellant's only criticism of the deputy's findings relates to the two sentences,— that at the time of the injury no employment existed in the District of Columbia, and—that the contract of hire was made in the State of Maryland. Relying largely upon Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, counsel insist that appellant had a right to challenge in the court below the deputy's "conclusion" in the respect mentioned and to have the court examine the record and determine for itself whether the greater weight of the evidence was not contrary to the finding. From this it follows that if we hold that both we and the trial court are bound by the deputy's findings, no other question remains, and the appeal is foreclosed. It should be borne in mind that the case as thus made is not one in which the appellant is seeking to make a new record in the trial court. All that he says is that, because under the doctrine of Crowell v. Benson the question whether the relation of master and servant exists is a "constitutional jurisdictional fact" and therefore one as to which the deputy cannot make conclusive findings, the power of the District Court to inquire for itself is unchallengeable.

We are unable to agree with this contention. It is quite true that the Supreme Court said in Crowell v. Benson that in a claim under the provisions of the Longshoremen's and Harbor Workers' Compensation Act there are two fundamental requirements: one, that the injury occur upon the navigable waters; the other, that the relation of master and servant exist; and that the facts in relation to these fundamental requirements must be decided by a court and not by a deputy commissioner. The authority for the holding is that Congress cannot reach beyond the constitutional limits which are inherent in the exclusive grant of judicial power in cases of admiralty and maritime jurisdiction. Or, in the language of the opinion, "Unless the injuries to which the act relates occur upon the navigable waters of the United States, they fall outside that jurisdiction,"[2] and Congress is without power under the grant of admiralty jurisdiction to create liability if the injury

---

[2] 285 U.S. at page 55, 52 S.Ct. at page 294, 76 L.Ed. 598.

is sustained on the land, and is equally without power to create liability where the relation of master and servant, in the maritime employment, does not exist. This, of course, means that in the exercise by Congress of the constitutional grant of exclusive jurisdiction in admiralty, power to legislate in respect thereto exists only where the subject-matter is essentially maritime and the relation of employer and employee exists. The first is easily understandable, the latter has been sometimes said to be difficult. Critics of the Crowell-Benson opinion have wondered what is the difference between the employment relation and the question whether the injury occurred in the course of the employment or arose out of the employment, or happened at all, or was self-inflicted.[3] But in this case we do not need to concern ourselves with these distinctions. The language of Crowell v. Benson is no more than the recognition of the doctrine that as to a constitutional limitation the finding of a fact by an administrative officer is not conclusive. And if this is not correct, in my opinion it should be, but whether correct or incorrect, the holding of the Supreme Court, so far as we are concerned, is binding and must be accepted at face value. And this we can do, we think, without effect upon the question we are here called on to decide.

The Crowell-Benson case arose under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, and that Act was itself the result of many previous decisions of the Supreme Court holding unconstitutional acts of Congress having as their purpose the bringing of maritime injuries within the purview of state compensation laws. The effect of these decisions was, for the time being, to create a sort of "no man's land" in the modern scheme of making the products of industry bear the cost of industrial accidents, and the Act itself was a belated recognition that only Congress, under the constitutional grant, could substitute compensation in place of a maritime cause of action in case of injury —whether with or without fault. And the nub of the decision in Crowell v. Benson is that this might be done only in the two conditions named. But obviously as to the latter, this is so only because of the constitutional limitations inherent in the administration of the maritime jurisdiction. The opinion, however, readily recognizes that a different situation exists as to power, both in nation and state, where this constitutional limitation is lacking. "A state may distribute its powers as it sees fit, provided only that it acts consistently with the essential demands of due process and does not transgress those restrictions of the Federal Constitution which are applicable to state authority".[4] The New York Court of Appeals, in Helfrick v. Dahlstrom Metallic Door Co., 256 N.Y. 199, 176 N.E. 141, held that the New York Act, which makes the finding of the commissioner "final as to *all* questions of fact", was not violative of the due process clause of the Fourteenth Amendment, and the Supreme Court affirmed, Dahlstrom Metallic Door Co. v. Industrial Board of State of New York, 284 U.S. 594, 52 S.Ct. 202, 76 L.Ed. 511. By the same token the District of Columbia law, which makes the factual decision of the deputy final, is no more violative of the due process clause of the Fifth Amendment than a State act to the same effect is violative of the Fourteenth. So far as we are advised, no State court has ever held that the question of the relation of master and servant is one which the legislature may not commit to the decision of an administrative agency. Many courts have held such delegation valid. See Hillen v. Industrial Accident Commission, 199 Cal. 577, 580, 250 P. 570; York Junction Transfer & Storage Co. v. Industrial Accident Commission, 202 Cal. 517, 521, 261 P. 704; Index Mines Corporation v. Industrial Commission, 82 Colo. 272, 275, 259 P. 1036; Ocean Accident & Guarantee Corp. v. Wilson, 36 Ga.App. 784, 138 S.E. 246; Cinofsky v. Industrial Commission, 290 Ill. 521, 523, 125 N.E. 286; Churchill's Case, 265 Mass. 117, 119, 164 N.E. 68; Matter of Dale v. Saunders Brothers, 218 N.Y. 59, 63, 112 N.E. 571, Ann.Cas.1918B, 703; Oklahoma Pipe Line Co. v. Lindsey, 113 Okl. 296, 298, 241 P. 1092; Belmonte v. Connor, 263 Pa. 470, 472, 106 A. 787. The federal government, likewise, may confer upon administrative agencies created to aid in performance of many governmental functions the determination of questions of fact,— including the master-servant relation. The

---

3 See Larson, The Doctrine of "Constitutional Fact" (1941), 15 Temple U.L.Q. 185, 189.

4 285 U.S. at page 57, 52 S.Ct. at page 295, 76 L.Ed. 598.

test is whether the delegation concerns the exercise of the judicial power in enforcing constitutional limitations.

The case we have does not arise under the Longshoremen's Act, though doubtless it might if the injury had occurred on a vessel in the Potomac River, tied to a Washington dock. True enough, the language and provisions of the national Act are made applicable to the District, but the two Acts are wholly separate and distinct, for the reason that in the one Congress was exercising the judicial powers conferred under Art. III, whereas in the other—the local act—Congress was exercising the powers granted in Sec. 8 of Art. I, and these powers, the Supreme Court said in Keller v. Potomac Electric Power Co., 261 U.S. 428, 442, 43 S.Ct. 445, 67 L.Ed. 731, include not only the powers that belong to Congress in respect of territory within a State but the powers of the State as well—a delegation which, as we said in Nield v. District of Columbia, 71 App.D.C. 306, 110 F.2d 246, embraces full and unlimited jurisdiction, subject only to the prohibitions of the Constitution, to provide for the general welfare of citizens within the District of Columbia by any and every act of legislation which Congress may deem conducive to that end. And since, as we have seen, "due process" required of a State is not impinged by the delegation, no more is "due process" required of the Federal Government impinged by it. Hence, we are of opinion that the delegation of powers in the local Act—as in a similar State act—is subject to review and reversal by a court only in a case in which the findings are not supported by substantial evidence. And if that be correct, then clearly the contention of appellant cannot be sustained. For here, admittedly, the evidence on the subject of the place of employment is conflicting. Appellant himself testified, and was supported by witnesses, that the offer of employment made by the foreman of employer, in Washington City, on the evening of the day before the work began created an employment. The foreman and the assistant superintendent testified that it did not, but instead that appellant was not hired until he was put to work. The deputy, who heard the testimony and saw the witnesses, found that the conversation in which the offer occurred was no more than a tender of employment to be consummated the next day in Maryland by a meeting of minds and a signing up on the job. And not only is this logical, but it is amply supported by the evidence. The employer was a foreign corporation with its office in the State of New York. So far as the District of Columbia is concerned, it was an itinerant building contractor. It solicited its labor where it could find it, on the streets, in union halls, or at the homes of men known as eligible for a job. Employment began when the work began and stopped when the work stopped. The employer was at the moment engaged in a building operation in the State of Maryland, and the work for which appellant was hired was to be performed in Maryland. The injury occurred in Maryland, and appellant sought and obtained compensation under her laws. We are, therefore, of opinion that the deputy's finding that the employment relationship was in Maryland and not in the District of Columbia is correct.

From all of this it follows that the decision below was correct, and this makes unnecessary any discussion whether a different result would be required even if it could be held that the contract as appellant claims, was made within the limits and boundaries of the District of Columbia.

Affirmed.