Samuel ESTEP, et al., Appellants,

v.

CONSTRUCTION GENERAL, INC., et al., Appellees.

No. 85–543.

District of Columbia Court of Appeals.

Argued March 5, 1986.
Reargued April 20, 1987.
Decided July 18, 1988.

Peter J. Vangsnes (counsel for argument on March 5, 1986) and Wayne M. Mansulla (counsel for argument on April 20, 1987), with whom Wayne C. Burgy and Karl N. Marshall, Washington, D.C., were on the briefs, for appellants.

Ignacio B. Pessoa (counsel for argument on March 5, 1986), with whom Christopher K. Speed, Arlington, Va., and James M. Heffler, Washington, D.C., were on the briefs, for appellees.

Walter A. Smith, Jr. (counsel for argument on March 5, 1986 and for reargument on April 20, 1987), with whom Vincent H. Cohen, Robert B. Cave and David F. Grady, Washington, D.C., were on the briefs, for amicus curiae Washington Metropolitan Area Transit Authority.

Edward E. Schwab, Asst. Corp. Counsel, with whom John H. Suda, Acting Corporation Counsel at the time the briefs were filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the briefs, for the District of Columbia.

Before MACK, FERREN, and STEADMAN,* Associate Judges.

FERREN, Associate Judge:

Samuel Estep was injured in 1979 while working for Krick Commercial, Inc. He received compensation from Krick under the District of Columbia Workmen's Compensation Act of 1928, D.C.Code § 36–301 *et seq.* (1973), which applied to injuries occurring before mid–1982. Estep and his wife then brought a negligence action against the general contractor on the project, Construction General, Inc., which had neither obtained workers compensation insurance for Krick's employees nor paid any part of the compensation to Estep. The trial court granted Construction General's motion for summary judgment, reasoning that, under Supreme Court precedent, the 1928 Act granted Construction General immunity from any tort liability arising from Estep's injury.

This appeal, then, presents the question whether, under the Workmen's Compensation Act of 1928, a general contractor that did not itself obtain compensation for an injured worker is immune from tort liability when the subcontractor that directly employed the worker did meet its statutory obligation to provide compensation.[1] In *DiNicola v. George Hyman Construction Co.*, 407 A.2d 670 (D.C.1979), we ruled that such a general contractor is not immune from tort liability. Five years later, however, the Supreme Court ruled in *Washington Metropolitan Area Transit Authority v. Johnson*, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984), that an injured District of Columbia worker cannot sue a general contractor in tort unless both the subcontractor and the general contractor have defaulted on their statutory obligations to provide workers compensation for the injury. Under *DiNicola*, therefore, Construction General would not be immune from

---

* Hubert B. Pair, *Senior Judge*, was originally a member of this division. John M. Steadman, *Associate Judge*, was drawn to replace him pursuant to the Internal Operating Procedures of this court.

1. In this opinion, we use the term "general contractor" to refer to contractors generally; it therefore includes a subcontractor that hires a sub-subcontractor. Similarly, the term "subcontractor" also includes sub-subcontractors.

tort suits brought by Krick employees such as Samuel Estep. Under *Johnson*, however, Construction General would be immune because its subcontractor, Krick, did not default on Krick's statutory obligation to provide compensation to Estep. The Esteps contend that the rule announced in *Johnson* should not govern injuries covered by the 1928 Act; they argue that we should adhere to the rule of *DiNicola*. We disagree and, on the authority of *Johnson*, affirm the trial court's dismissal of the lawsuit.

## I.

In 1927, Congress passed the Longshoremen's and Harbor Workers' Compensation Act (the Longshore Act) to provide workers compensation for maritime employees. 33 U.S.C. §§ 901 *et seq.* (1982). A year later, Congress enacted the District of Columbia Workmen's Compensation Act of 1928 (the 1928 Act), which simply made the provisions of the Longshore Act applicable to deaths and injuries befalling workers employed in the District of Columbia. D.C. Code § 36–501 (1973). The 1928 Act has no substantive provisions of its own; it merely incorporates the provisions of the Longshore Act "including all amendments that may hereafter be made thereto." *Id.*

The Council of the District of Columbia has since repealed the 1928 Act and replaced it with the District of Columbia Workers' Compensation Act of 1980 (the 1980 Act), which, for reasons not relevant here, did not take effect until July 24, 1982.

D.C.Code §§ 36–301 *et seq.* (1981); *O'Connell v. Maryland Steel Erectors, Inc.*, 495 A.2d 1134, 1141 (D.C.1985) (as amended), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986). Subsequently, Congress amended the Longshore Act in the Longshore and Harbor Workers' Compensation Act Amendments of 1984 (the 1984 Amendments). Among these amendments were provisions designed to overrule the Supreme Court's interpretation in *Johnson* of the provisions of the Longshore Act at issue (by way of the 1928 Act) in this case. 33 U.S.C. §§ 904 & 905 (Supp. III 1985). In *O'Connell*, however, we held that the 1984 Amendments had no effect on District of Columbia law because the 1928 Act, to which they would have applied, no longer existed.

More specifically, we concluded that when the 1980 Act repealed the 1928 Act, all claims for injuries occurring before the effective date of the new act, July 24, 1982, were cognizable not under the 1928 Act itself, but under the *terms* of the 1928 Act by way of 1 U.S.C. § 109 (1982), "a savings statute enacted by Congress to deal with the legal effect to be accorded a repealed statute." *O'Connell*, 495 A.2d at 1141.[2] As a consequence, for purposes of litigating such pre–1982 claims, the federal savings statute incorporated and thus froze the terms of the 1928 Act in the form they had immediately before the 1980 Act's effective date of repeal. It followed that, because the 1928 Act as such no longer existed as of July 24, 1982, there no longer

---

**2.** In *O'Connell v. Maryland Steel Erectors, Inc.*, 495 A.2d 1134 (D.C.1985) (as amended), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986), which this division is bound to follow, *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971), this court did not directly discuss what law the Council of the District of Columbia intended to apply to pre–1980 Act claims once the 1928 Act had been repealed and the 1980 Act had become effective. Theoretically, the Council could have intended to repeal the 1928 Act only as to claims accruing on or after July 24, 1982, leaving the 1928 Act, as such, including judicial interpretations thereof and congressional amendments thereto, in effect for all claims accruing before the effective date of repeal. This court in *O'Connell,* however, concluded that the Council instead absolutely repealed the 1928 Act effective July 24, 1982, leaving nothing

in its place for earlier claims except the federal savings statute, 1 U.S.C. § 109 (1982). In reaching this conclusion, we did not make clear whether this result was the Council's intent or instead was dictated by Congress, irrespective of the Council's intent, as the law that applies whenever a congressionally-enacted statute of purely local application in the District of Columbia is repealed. In any event, *O'Connell,* in applying to pre–1980 Act claims the terms of the 1928 Act through the federal savings statute, rather than applying the 1928 Act as such, resolved an ambiguity in two earlier opinions that simply said the 1928 Act applied to claims accruing before the effective date of the new act. *See Garrett v. Washington Air Compressor Co.,* 466 A.2d 462, 462 n. 1 (D.C.1983); *Carey v. Crane Service Co., Inc.,* 457 A.2d 1102, 1103 n. 2 (D.C.1983).

was a District of Columbia statute to which congressional amendment of the Longshore Act could apply. *Id.* at 1140–42; *accord, Keener v. Washington Metropolitan Area Transit Authority,* 255 U.S.App.D.C. 148, 800 F.2d 1173 (1986) (deferring to this court's decision in *O'Connell*), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). Whatever power Congress may have had to resurrect the 1928 Act solely for purposes of applying the 1984 Amendments to the District of Columbia, *O'Connell* must be understood to say that Congress did not do so.

In sum, Estep's claim is governed not by the 1928 Act but by the terms of the 1928 Act preserved through the federal savings statute. Accordingly, Estep's claim is governed by the provisions of the Longshore Act as they existed before the 1984 Amendments, since repeal of the 1928 Act itself eliminated the statutory basis for incorporating later amendments to the Longshore Act into District of Columbia law.

## II.

Section 4(a) of the Longshore Act requires employers to obtain compensation for injured employees. 33 U.S.C. § 904(a) (1982). In exchange for undertaking this obligation, employers receive immunity under § 5(a) from tort suits by injured employees. 33 U.S.C. § 905(a) (1982). "In return for the guarantee of compensation, the employees surrender common-law remedies against their employers for work-related injuries. For the employer, the reward for securing compensation is immunity from employee tort suits." *Johnson,* 467 U.S. at 931, 104 S.Ct. at 2831. It follows that an employer who defaults on the obligation to provide compensation does not receive such immunity. 33 U.S.C. § 905(a) (1982).

The situation of general contractors, however, presents a special problem. Section 4(a) specifically requires a general contractor to obtain compensation for employees of its subcontractor only if the subcontractor has failed to do so. Thus, a general contractor that fails to obtain compensation does not default on its statutory obli-

gations unless the subcontractor also has failed to obtain compensation. 33 U.S.C. § 904(a) (1982). The 1928 Act did not make clear, however, whether such a nondefaulting general contractor enjoys the same immunity from tort suits that a nondefaulting employer generally enjoys, even though the general contractor has not itself obtained compensation or insurance for its subcontractor's employees.

In *DiNicola,* we held that under the 1928 Act a general contractor can be sued for its negligence when the subcontractor has paid the injured employee as the workers compensation scheme demands. According to *DiNicola,* the general contractor enjoys tort immunity only when the subcontractor has failed to obtain adequate insurance and the general contractor then meets its resulting duty to step in to pay workers compensation. In reaching this result, the *DiNicola* court interpreted the relevant provisions of the federal Longshore Act; as have other decisions of this court, the *DiNicola* opinion consistently characterized its reasoning as a construction of federal law and drew upon federal court precedents interpreting the Longshore Act. *See DiNicola,* 407 A.2d at 672, 674–75; *see also Lee v. District of Columbia Department of Employment Services,* 509 A.2d 100, 103 (D.C.1986); *Milligan v. Brian Construction Development Co.,* 485 A.2d 593 (D.C.1984); *Dodson v. Washington Automotive Co.,* 461 A.2d 1020 (D.C.1983) (per curiam).

Several years later, the Supreme Court squarely rejected *DiNicola's* understanding of §§ 4(a) and 5(a) of the Longshore Act, as incorporated in the 1928 Act. In *Johnson,* the Court held that general contractors share the presumption of immunity enjoyed by all employers. Like other employers, a general contractor loses this immunity only if it defaults on its statutory obligations. *Johnson,* 467 U.S. at 937, 104 S.Ct. at 2834. But, because a general contractor has no obligation to its subcontractor's employees unless the subcontractor has defaulted, the general contractor cannot default under the statute as long as the subcontractor provides compen-

sation. The general contractor, therefore, loses its immunity only when both the subcontractor and the general contractor have failed to pay workers compensation. It is only the general contractor's failure to step in after the subcontractor has defaulted that removes the general contractor's tort immunity. *Id.* at 938–40, 104 S.Ct. at 2834–36.

The *Johnson* case arose from injuries suffered by employees of subcontractors working for the Washington Metropolitan Area Transit Authority (WMATA) as general contractor. The employees were covered by the 1928 Act, not directly by the federal Longshore Act. Their suits against WMATA, therefore, were brought under the 1928 Act, and any resolution of their complaints necessarily constituted a construction of the 1928 Act. *Johnson* accordingly interpreted §§ 4(a) and 5(a) of the Longshore Act as incorporated into the 1928 Act, the same District of Columbia law at issue in *DiNicola* and in the present case. *See Johnson*, 467 U.S. at 927–28 & n. 4, 104 S.Ct. at 2829–30 & n. 4.

Like this court in *DiNicola*, the Supreme Court in *Johnson* reached its view of the 1928 Act through an interpretation of the Longshore Act. Both the Supreme Court in *Johnson* and this court in *DiNicola*, therefore, drew no distinction between the 1928 Act and the Longshore Act; both courts assumed that a correct interpretation of §§ 4(a) and 5(a) of the Longshore Act constituted a correct interpretation of the 1928 Act. But that is where the similarity ends. *Johnson* and *DiNicola* adjudicated the same issue with respect to the same statute and reached absolutely conflicting results. The question, then, is which decision binds us now.

### III.

■ The 1928 Act was enacted by Congress but affects only the District of Co-

lumbia. "Acts of Congress affecting only the District, like other federal laws," fall within the Supreme Court's Article III jurisdiction. *Whalen v. United States*, 445 U.S. 684, 687, 100 S.Ct. 1432, 1435, 63 L.Ed. 2d 715 (1980). The Supreme Court has the power to review "decisions of the District of Columbia Court of Appeals interpreting those Acts" and may reject decisions of this court interpreting local laws passed by Congress. *Id.* Accordingly, in *Johnson* the Supreme Court acted entirely within its authority in deciding for itself the question of contractor liability under the 1928 Act, despite the existence of a local Court of Appeals decision reaching the contrary result. The Esteps argue that we may, nonetheless, decline to enforce the Supreme Court's construction because *Johnson* failed to give the deference to the District of Columbia Court of Appeals that the Court's own precedents demand.

### A.

Although the Supreme Court has the power to exercise plenary review over questions raised by Acts of Congress touching only the District of Columbia, it has chosen to treat decisions of this court on questions of local law "in a manner similar to the way in which [it] treat[s] decisions of the highest court of a State on questions of state law." *Pernell v. Southall Realty*, 416 U.S. 363, 368, 94 S.Ct. 1723, 1726, 40 L.Ed.2d 198 (1974) (footnote omitted). The Supreme Court has stated that it will not overrule the District of Columbia courts on matters of local law "'save in exceptional situations where egregious error has been committed.'" *Id.* at 369, 94 S.Ct. at 1726 (quoting *Fisher v. United States*, 328 U.S. 463, 476, 66 S.Ct. 1318, 1325, 90 L.Ed. 1382 (1946)).

The Esteps point out, however, that the *Johnson* opinion betrays no such deference to our decision in *DiNicola*.[3] Nor does

---

3. Indeed, *Washington Metropolitan Area Transit Authority v. Johnson*, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984), cites *DiNicola* only as one of the majority of cases that have "concluded that § 5(a)'s tort immunity can extend to general contractors, at least when the contractor has fulfilled its responsibilities to secure com-

pensation for subcontractor employees in accordance with the requirements of § 4(a)." 467 U.S. at 933–34, 104 S.Ct. at 2832 (citing *DiNicola v. George Hyman Construction Co.*, 407 A.2d 670, 674 (D.C.1979)); *cf. DiNicola*, 407 A.2d at 674 (approving prior cases "concluding that a land-based general contractor is liable as a third

*Johnson* even mention the doctrine of deference to the local District of Columbia courts. Had it treated the 1928 Act as a local law, contend the Esteps, the Supreme Court presumably would have deferred to our decision in *DiNicola,* not overruled it. (Perhaps even more likely, they say, the Court might not have addressed the issue at all in a case arising under the local law of the District rather than under the Longshore Act itself.) In any event, the Esteps argue we may ignore *Johnson* because the Supreme Court erred, according to its own doctrine, by failing to defer. They would have us treat *Johnson* as a state court may treat the rare examples of Supreme Court interpretation of state law that rest on neither a federal statute nor on the federal constitution: just as a state court may ignore a Supreme Court construction purely of state law, this court may ignore the *Johnson* Court's non-deferential construction of local law. *See Owen J. Jones & Son, Inc. v. Gospodinovic,* 46 Or.App. 101, 107, 610 P.2d 1238, 1241 (1980) (en banc) ("A construction of an Oregon statute by the United States Supreme Court is instructive, but not necessarily controlling."); *American Radiator & Standard Sanitary Corp. v. Mark Engineering Co.,* 230 Md. 584, 588, 187 A.2d 864, 866 (1963) (same).

The view that Supreme Court rulings on state law cannot bind the state's own courts is justified because "Supreme Court decision of state law questions for the future"—rather than solely for a specific case at hand—"would be such startlingly bad federalism that it could easily be called unconstitutional." 16 C. WRIGHT, A. MILLER, E. COOPER & E. GRESSMAN, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4021 at 680 (1977) (footnote omitted). Because the District, however, is not a state, Supreme Court interference with the

courts of the District cannot raise legitimate objections grounded purely on concerns about federalism. Moreover, although Congress has directed that District of Columbia courts have great autonomy in the application of local laws—and the Supreme Court itself has embraced this principle—the Court has held only that it will treat decisions of this court "in a manner similar" to its treatment of state court decisions on state law. *Pernell,* 416 U.S. at 368, 94 S.Ct. at 1726. The principle that a state may ignore Supreme Court rulings on state law, therefore, has no direct application to the relation between the Supreme Court and the District of Columbia courts. Whether there are circumstances in which we may nonetheless decline to follow a Supreme Court decision construing a local law adopted by the Congress, however, is a question we need not decide. Nor, of course, is a matter of local law adopted by the Council of the District of Columbia before us. *See Meiggs v. Associated Builders, et al.,* 545 A.2d 631 (D.C.1988). Whatever merit the Esteps' argument might have in another context, we conclude it does not apply here, for, as elaborated below, in construing the 1928 Act of Congress, the Supreme Court implicitly concluded that deference to this court was "inappropriate with respect to the statute [ ] involved." *Whalen,* 445 U.S. at 688, 100 S.Ct. at 1435.

### B.

The Supreme Court has stated that the doctrine of deference to the District of Columbia courts on matters of local law does not apply when a question of general federal law "cannot be separated" from the question of local law. *Whalen,* 445 U.S. at 688, 100 S.Ct. at 1435.[4] We believe *John-*

---

party for his negligence"). *Johnson,* therefore, does not even mention that this court had interpreted the local law directly at issue and had held general contractors not immune unless they did in fact obtain compensation for the injured employees of their subcontractors.

**4.** The opinion for the Court in *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), does not make entirely clear the relevant sense in which the construction of the

local law in that case was inseparable from federal law. The *Whalen* Court set out to determine whether, in enacting the local District of Columbia criminal law, Congress intended to allow the local courts to impose separate, consecutive sentences for rape and killing during the commission of a rape. This was a question of construing purely local law, seemingly an issue for which deference to this court was due. The Supreme Court, however, found a nexus

*son* embodies the premise that, because the 1928 Act merely incorporates the provisions of the Longshore Act, construction of the 1928 Act "cannot be separated" from construction of the Longshore Act, and thus Congress intended the construction of the local law and the federal law to be identical.

■ The *Johnson* Court was aware that the controversy in that case had arisen within the District of Columbia and that the employees had received workers compensation under the 1928 Act rather than directly under the Longshore Act. *See Johnson*, 467 U.S. at 927–28 & n. 4, 104 S.Ct. at 2829–30 & n. 4. The Court nonetheless refers throughout only to the provisions of the Longshore Act and characterizes its holding as an interpretation of the Longshore Act controlling all future applications of the federal law. The form of the decision, then, is consistent with the premise that the meaning of relevant provisions

of the 1928 Act is identical to the meaning of the same terms viewed solely as provisions of the Longshore Act. Because the 1928 Act falls within the Supreme Court's Article III jurisdiction, it is entirely within the Supreme Court's power to interpret the local law as a pure incorporation of the federal law and, therefore, as identical in meaning to the federal Act. In applying this view of the local law (as identical to the federal statute) the Supreme Court did not act contrary to any decision of this court. As noted above, our decisions in *DiNicola* and other cases at least implicitly have taken precisely the same approach. Indeed, in *Dodson*, we expressly said that the Supreme Court's interpretation of the 1928 Act provisions at issue in that case was binding on this court. *See Dodson*, 461 A.2d at 1024 (following *Rodriguez v. Compass Shipping Co., Ltd.*, 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981), in construing D.C.Code § 36–501 (1973)).[5]

between local and federal law in the fact that, if Congress had not intended to allow consecutive sentences, then the local courts had violated the double jeopardy clause of the fifth amendment by giving Whalen consecutive sentences for rape and first degree murder. The Court believed this nexus was sufficient to remove the case from those in which deference is due, though not absolute. But the question whether Congress intended to allow multiple sentences was logically independent of the fifth amendment bar on courts imposing multiple sentences unless authorized by Congress; thus, *Whalen* was not a case where local and federal questions were bound together because resolution of the local question depended upon resolution of the federal question. It is difficult to understand why deference was not due on the independent issue of statutory construction. The concurring opinions of Justices White and Blackmun may provide a more solid ground for the Court's decision to reverse this court's view of congressional intent in *Whalen*. In their view, the local court was owed initial deference but had made the kind of "egregious error" that justified the Supreme Court in overriding this court's interpretation of the Act of Congress in question. *See Whalen*, 445 U.S. at 695–96, 100 S.Ct. at 1440 (White, J., concurring), 696, 100 S.Ct. at 1440 (Blackmun, J., concurring).

5. The treatment here accorded the 1928 Act is entirely consistent with the view that it is a "local law" and that the United States Courts of Appeal for the lower federal courts continue to owe deference to this court in interpreting that

law. The United States Court of Appeals for the District of Columbia Circuit has developed a practice of treating local interpretations of local law exactly as, under the doctrine of *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts in the states treat state court interpretations of state law. *Hall v. C & P Telephone Co.*, 253 U.S.App.D.C. 368, 370–71, 793 F.2d 1354, 1356–57 (1986), *reh'g denied*, 258 U.S.App.D.C. 83, 809 F.2d 924 (1987). The Circuit Court has applied this doctrine to construction of the 1928 Act. *Id.* at 1355–59; *Keener v. Washington Metropolitan Area Transit Authority*, 255 U.S.App.D.C. 148, 152–53, 800 F.2d 1173, 1177–78 (1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). (The Circuit Court in *Johnson*, contrary to current practice, did not expressly defer to *DiNicola*. *See Johnson v. Bechtel Associates Professional Corp.*, 230 U.S.App.D.C. 297, 303–06, 717 F.2d 574, 580–83 (1983), *rev'd on other grounds, Washington Metropolitan Area Transit Authority v. Johnson*, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984).) This deference by the Circuit Court is called for even where the Supreme Court has decided deference on its own part is not appropriate. Just as the Supreme Court is the third and last forum after the Superior Court and this court, the Supreme Court is the final forum after the federal District Court and Circuit Court of Appeals, comprising a system distinct from but parallel to the local court system. The Supreme Court, therefore, may properly construe local law in contradiction to a holding of this court, whereas the federal District and Circuit Courts ought not to

We believe the *Johnson* and *DiNicola* courts' understanding of the relation between the 1928 Act and the Longshore Act is fully justified, at least with respect to provisions, such as those governing general contractor liability, that apply equally to the contexts of land-based and maritime employment. The two laws were passed by the same Congress. More strikingly, the text of the 1928 Act does not track or imitate the terms of the Longshore Act but expressly states the Longshore Act, as such, shall apply as the District of Columbia's workers compensation law. The full text of the 1928 Act (aside from a provision stating exceptions not relevant here) consists of a single sentence stating that "[t]he provisions of [the Longshore Act], including all amendments that may hereafter be made thereto, shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia"—with appropriate broadening of the terms "employer" and "employee" to extend beyond maritime occupations. D.C.Code § 36–501 (1973). Congress suggested no intention to differentiate between the substantive compensation schemes of the local and federal laws; it provided instead that all amendments to the federal law would become part of the local law. The manner in which Congress wrote the 1928 Act, therefore, indicates its intention that the two laws be substantively the same. From this we infer that an authoritative judicial interpretation of the Longshore Act should generally control the meaning of the 1928 Act.

The *Johnson* and *DiNicola* courts, therefore, correctly assumed that to construe the 1928 Act is to construe the Longshore Act, and vice versa. This conclusion does not preclude the possibility that, in some circumstances, the two Acts may diverge. A court construing the 1928 Act

may find good reason to give the local law a gloss different from an interpretation appropriate to the federal law, for the two Acts cover different kinds of employment that may justify different treatment of specific problems. *Cf. Gudmundson v. Cardillo*, 75 U.S.App.D.C. 230, 126 F.2d 521 (1942) (declining to apply *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), which construed the Longshore Act, to a 1928 Act case because *Crowell* concerned constitutional limits on the admiralty power of Congress not relevant to congressional power over the District of Columbia); *Director, Office of Workers' Compensation Programs, United States Department of Labor v. National Van Lines, Inc.*, 198 U.S.App.D.C. 239, 243 n. 20, 613 F.2d 972, 978 n. 20 (1979) (United States Court of Appeals for the District of Columbia Circuit has broader territorial jurisdiction over 1928 Act claims than over Longshore Act claims), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3049, 65 L.Ed.2d 1136 (1980); *see also Hall v. C & P Telephone Co.*, 253 U.S.App.D.C. 368, 372–73, 793 F.2d 1354, 1358–59 (1986). Here, however, we see no reason to believe the nature of claims arising under the 1928 Act rationally demands a different treatment of general contractor liability from the treatment accorded under the Longshore Act. Accordingly, *Johnson*, not *DiNicola*, controls.[6]

*Affirmed.*

MACK, Associate Judge, dissenting:

In 1970, Congress undertook a radical reorganization of the court system of the District of Columbia. It created an autonomous local judicial system and announced that from then on "[t]he highest court of the District of Columbia is the District of Columbia Court of Appeals."[1] In the years that have followed, this court, by

do so out of respect for this court's primary role in construing District of Columbia law.

**6.** Basically, the dissent says that *DiNicola*, not *Johnson*, should control because the Supreme Court "simply failed to recognize that *Johnson* involved 'an issue of local law'.... [T]he Supreme Court in *Johnson* did not interpret the local act." *Post* at 387, 390. We are unwilling

to end-run the Supreme Court on that basis; *Johnson* squarely presented, and necessarily decided, the 1928 Act issue.

**1.** District of Columbia Court Reorganization Act of 1970, D.C. Code § 11–102 (1981); *see generally* Pub.L. No. 91–358, 84 Stat. 473 ("Court Reorganization Act") (codified at scattered sections of the D.C. Code and U.S.C.).

virtue of the Court Reorganization Act, as reinforced by the Home Rule Act,[2] has been thrust in the role of the final expositor of District of Columbia law. *See Gillis v. United States*, 400 A.2d 311, 313 (D.C. 1979); *Reichman v. Franklin Simon Corp.*, 392 A.2d 9 (D.C.1978).[3]

Today the majority of the "highest court of the District of Columbia" reaches a remarkable conclusion. It decides that this court is prohibited from following its own prior interpretation of the District of Columbia Workmen's Compensation Act of 1928 (hereinafter "DCWA" or "1928 Act").[4] *See DiNicola v. George Hyman Construction Co.*, 407 A.2d 670 (D.C.1979). This is because, reasons the majority, the Supreme Court, some five years after *DiNicola*, reached a "conflicting" result in interpreting the Longshore and Harbor Workers' Compensation Act of 1927 (hereinafter "LHWCA" or "1927 Act")[5] in ruling upon facts arising in the District of Columbia. *See Washington Metropolitan Area Transit Authority v. Johnson*, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984).

The majority recognizes that the Supreme Court of the United States "has chosen" to treat decisions of the District of Columbia Court of Appeals on questions of local law "in a manner similar to the way in which [it] treat[s] decisions of the highest court of a State on questions of state law." Majority opinion at 380 (citing *Pernell v. Southall Realty*, 416 U.S. 363, 368, 94 S.Ct. 1723, 1726, 40 L.Ed.2d 198 (1974) (footnote omitted)). Uneasy, no doubt, with the appellants' argument that the Supreme Court in *Johnson* erred in not following its principle of deference, the majority volunteers its own rationale: *Johnson*, says the major-

ity, "squarely rejected" *DiNicola* because deference to *DiNicola* would have been "inappropriate"—on the surface an interesting conclusion since *Johnson* says nothing about rejecting *DiNicola*, failing to defer to, or overruling District of Columbia law.[6]

To the majority's credit, its reasoning does not hinge solely upon a knee-jerk reaction to the history of the District of Columbia's hybrid existence. It instead focuses upon isolated language in the case of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), to the effect that "[a]cts of Congress affecting only the District, *like other federal laws*, certainly come within [the Supreme] Court's Art. III jurisdiction," *id.* at 687, 100 S.Ct. at 1435 (emphasis added) and reasons therefrom that the Supreme Court may reject decisions of this court interpreting local laws passed by Congress. To the extent that the "power" of the Supreme Court to review (as opposed to the "appropriateness" of deference) may be relevant to meet the majority's analysis, I need not question the proposition that the Supreme Court is not constitutionally barred from reviewing the decisions of the District of Columbia Court of Appeals interpreting acts passed by Congress, in the same sense that the Supreme Court would be barred from reviewing a state court's interpretation of a state statute. *Id.* at 687–88, 100 S.Ct. at 1435. I feel compelled, nevertheless, not to shirk from suggesting, however delicately, that it is not at all clear that acts of Congress affecting only the District are "laws of the United States" within the meaning of Article III.[7] Congress, in legis-

---

**2.** District of Columbia Self-Government and Governmental Reorganization Act of 1973, Pub. L. No. 93–198, 87 Stat. 774 (codified at scattered sections of the D.C. Code).

**3.** *See also* D.C. Code § 11–723 (1987 Supp.) (D.C. Court of Appeals may answer questions certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or the highest appellate court of any state).

**4.** 45 Stat. 600, ch. 12 (codified as amended at D.C. Code §§ 36–501 to –502 (1973)).

**5.** 33 U.S.C. §§ 901 to 950 (1982).

**6.** The trial court ruled that *Johnson* had "effectively" overruled *DiNicola*.

**7.** Article III provides: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish...." U.S. Const. art. III, § 1. "The Judicial power shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the *Laws of the United States*...." *Id.* § 2 (emphasis added). In this class of cases, "the

lating for the District, acts pursuant to its constitutional powers under Art. I, § 8, cl. 17, which grants the Congress the power of "exclusive legislation in all cases" in the District.[8] Congress' federal powers and its powers under clause 17 are "two distinct classes of legislative powers.... [Laws passed pursuant to the clause 17 powers] are not laws of the United States." *American Security & Trust Co. v. Rudolph*, 38 App.D.C. 32, 45 (1912).[9] *See O'Connell v. Maryland Steel Erectors, Inc.*, 495 A.2d 1134, 1140 n. 11 (D.C.1985), *cert. denied*, 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986); *see also Gary v. United States*, 499 A.2d 815, 850 (D.C.1985) (en banc) (Mack, J., dissenting) (when Congress acts as a national legislature, it is but one actor among three, but when it acts on a local scale, it " 'encompasses the *full* authority of government ... the Executive and Judicial powers as well as the Legislative' " (emphasis in original)), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986).

I am entitled to be bold in this respect because the Supreme Court, understandably in decisions over the years,[10] has not been entirely consistent in its jurisdictional treatment of congressional acts affecting only the District. And now, in view of the action of the Congress in transferring matters of purely local concern from the United States courts to the District of Columbia courts, I am reasonably sure that the Supreme Court has no burning desire to be thrown into the role of "the highest court of the District of Columbia." This question, however, can be left for another day, since it is apparent that the majority here, in finding that we are compelled to follow *Johnson*, has construed *Johnson* too rigidly, and has totally misconstrued *Whalen*.

### I.

The majority here reads *Whalen* to stand for the proposition that the Supreme Court need not defer to the District of Columbia courts on matters of local law "when a

---

supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make." *Id.*

As I suggest, it is not clear that congressional acts affecting only the District are "laws of the United States." But even if they are, it may be that the Court Reorganization Act's designation of this court as the "highest court of the District of Columbia," together with Congress' mandate that the District of Columbia Court of Appeal's decisions be treated like those of the highest court of a state, constitute a congressional "exception" or "regulation" under Art. III, § 2.

8. In legislating for the District of Columbia, Congress acts pursuant to its powers under Art. I, § 8, cl. 17 which grants the Congress the power "[t]o exercise exclusive Legislation in all Cases whatsoever, over such District ... as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States...." Clause 17 actually grants three types of power to the Congress: first, the power to extend laws of nationwide application to the District; second, the power to protect national interests there; and third, the power to enact state-like local laws governing District residents. There should be little dispute that laws passed pursuant to the first two types of power are laws of the United States. However, it is not immediately apparent that congressionally passed laws affecting only the District of Columbia "are like other federal laws." This assumes that every law

passed by Congress is a law of the United States. For District of Columbia purposes, we cannot equate "federal" and "United States."

9. The Court of Appeals of the District of Columbia went on to explain that

Congress is the sole legislative body for the Union, and in a broad sense all of its enactments are laws of the United States. But it has two distinct classes of legislative powers. The general function which it was established to perform is the enactment of laws that operate and govern throughout the United States. By virtue of the cession of the District of Columbia, it became invested with special legislative powers ... to the full extent possessed by [the ceding states].

*American Security, supra*, 38 App.D.C. at 45. Laws passed pursuant to these powers are not "laws of the United States...." *Id.*

10. In *Key v. Doyle*, 434 U.S. 59, 98 S.Ct. 280, 54 L.Ed.2d 238 (1977), for example, the Supreme Court held that a congressional enactment of purely local application is not "a 'statute of the United States' for [§ 1257(1) jurisdiction] purposes...." *Id.* at 61, 98 S.Ct. at 281. In contrast, in *Palmore v. United States*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), the Court held that where a prisoner sought appeal of his conviction under the D.C. Code as a matter of right (rather than by petition for certiorari), the District of Columbia Code should not be considered a state statute.

question of *general federal law* 'cannot be separated' from a question of *local law*." Majority opinion at 381 (citing *Whalen, supra*, 445 U.S. at 688, 100 S.Ct. at 1435 (emphasis added)). On this basis, the majority concludes that since the local act merely incorporates the provisions of the federal act, construction of the 1928 Act cannot be separated from the LHWCA [11] and therefore, the Supreme Court in *Johnson* owed no deference to this court's decision in *DiNicola*. In my view, this is an overly expansive reading of *Whalen*—one which completely ignores the constitutional underpinnings of that decision.

In *Whalen*, the petitioner was convicted of rape, and of killing the same victim in the perpetration of rape, and sentenced to separate terms of imprisonment for each conviction. He argued that the sentence for the offense of rape should be vacated since it merged for purposes of punishment with the felony-murder offense. To hold to the contrary, Whalen argued, would be to interpret the District of Columbia statutes so as to impose multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment.[12]

The Supreme Court, as the majority here correctly points out, noted in *Whalen* that deference is due to the District of Columbia courts "on matters of purely local concern." *Whalen, supra*, 445 U.S. at 687, 100 S.Ct. at 1435 (citing *Pernell v. Southall Realty, supra*, 416 U.S. at 366, 94 S.Ct. at 1725). But the majority fails to recognize that the Supreme Court, in declining to extend deference in *Whalen*, found that "petitioner's claim under *the Double Jeopardy Clause* [could not] be separated entirely from a resolution of the question of statutory construction." *Whalen, supra*, 445 U.S. at 688, 100 S.Ct. at 1435–36 (emphasis added). Thus, in *Whalen*, the Supreme Court refused to defer to this court's interpretation of local law because *the interpretation of the local law was intertwined with a constitutional*

---

**11.** Notwithstanding the fact that the DCWCA merely incorporated the federal act, the DCWCA and the LHWCA remain jurisprudentially distinct. The LHWCA was passed pursuant to Congress' admiralty power; the DCWCA, on the other hand, was passed pursuant to its plenary power to govern the District of Columbia. U.S. Const. art. I, § 8, cl. 17; *O'Connell, supra*, 495 A.2d at 1140, n. 11. Congress' use of identical language does not alter the local nature of the act. The 1928 Act is a form of "hybrid statute," one which although local in nature borrows the language of a federal statute subject to appropriate modifications. Where hybrid state statutes are involved, interpretation of the underlying federal language does present a federal question which the Supreme Court may answer. However, the highest court of the incorporating state is still free to interpret the state statute in a manner inconsistent with the Supreme Court's interpretation of the underlying federal language. *Standard Oil v. Johnson*, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942). *See* C. WRIGHT, THE LAW OF FEDERAL COURTS § 107, at 748 (1983) ("where a state statute incorporates federal law by reference, the Supreme Court may review a state court decision as to that statute, pass on the federal question that is incorporated by reference, and remand for the state court to reconsider its interpretation of the statute in light of the Supreme Court's interpretation of the underlying federal law").

Where a hybrid D.C. statute is involved, may the District of Columbia Court of Appeals follow the doctrine of *Standard Oil?* While the majori-

ty concludes that this is a question that it need not answer, it notes that principles of federalism do not compel the *Standard Oil* result with respect to the District. This is true. However, Congress has designated this court the "highest court of the District of Columbia." *Standard Oil* thus might be applicable to the District not because of principles of federalism but because of a Congressional decision.

**12.** In footnote 4, the majority attempts to disengage the local law question (*i.e.,* the question of statutory construction) in *Whalen* from the constitutional question: "But the question whether Congress intended to allow multiple sentences was logically independent of the fifth amendment bar of courts imposing multiple sentences unless authorized by Congress." Majority opinion at 381–82 n. 4. Notwithstanding the merits of this argument, the Supreme Court's decision not to defer was based upon a belief that the constitutional question and the local law question were intertwined: "But the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." *Whalen, supra,* 445 U.S. at 688, 100 S.Ct. at 1436. At any rate, the Court repeatedly iterated that the local law question was tied up with a constitutional question. Nowhere did the Court suggest that it was declining to defer because the local law question was tied up with a general question of federal law.

*question;* the Court did not suggest that deference is inappropriate where a question of local law cannot be separated from a question of general federal law.[13] *Whalen* therefore cannot be used as a vehicle to compel the conclusion that the Supreme Court in *Johnson* intended to overrule this court's interpretation of a local law.

## II.

Moreover, *Johnson* cannot be read as overruling this court's interpretation of a local law. The language of *Johnson* simply does not say this; in fact, unless it can be said that a printing or typographical error has intervened, *Johnson* cites *DiNicola* as representing the majority view which it is predisposed to follow. More significantly, the question of deference to local law was not briefed or argued. In fact, there is no indication that the *Johnson* Court focused upon the fact that a question of local law was involved. The length to which the majority here strains is apparent in its reasoning—*i.e.* since the Supreme Court was aware that the controversy in *Johnson* had arisen in the District of Columbia and since the Court referred only to the provisions of the Longshore Act, the *"form of the decision, then, is consistent with the premise* that the meaning of relevant provisions of the 1928 Act is identical to the meaning of the same terms viewed solely as provisions of the [LHWCA]." Majority opinion at 382 (emphasis added).[14]

It is equally true, however, that the form of the decision is consistent with the premise that the Court simply failed to recognize that *Johnson* involved "an issue of local law." As the majority here correctly

explains, *Johnson* arose as a result of injuries suffered by employees of subcontractors working for the Washington Metropolitan Area Transit Authority (WMATA) as general contractor. Metro was a massive construction project which led the general contractor, WMATA, to engage several hundred subcontractors, which in turn engaged over a thousand sub-subcontractors. Although not legally required to do so by the 1928 Act, WMATA purchased a "wrap-up" insurance policy covering the employees of all of its subcontractors. WMATA passed on to the subcontractors the cost of the insurance so that although the subcontractors were technically relieved of their normal statutorily-required insurance payments, they did in effect provide such payments. *See Johnson, supra,* 467 U.S. at 927–30, 104 S.Ct. at 2829–31.

The issue in *Johnson* was whether WMATA as general contractor was immune from suit. The Supreme Court, based upon the language of the employer's tort immunity clause in the federal LHWCA held that WMATA was protected from a negligence action by the employee of one of its subcontractors. "[Sections] 4(a) and 5(a) of the LHWCA render a general contractor immune from tort liability provided the contractor has not failed to honor its statutory duty to secure compensation for subcontractor employees when the subcontractor itself has not secured such compensation. So long as general contractors have not defaulted on this statutory obligation to secure back-up compensation for subcontractor employees, they qualify for § 5(a)'s grant of immunity."

---

**13.** I would also note that the *Whalen* standard is not the only one adopted by the Supreme Court with respect to review of District of Columbia Court of Appeals' interpretations of local law. In *Pernell v. Southall Realty, supra,* the Court noted that the Court Reform Act supported its "longstanding practice of not overruling the Courts of the District on local law matters 'save in exceptional situations where egregious error has been committed.'" *Id.* 416 U.S. at 369, 94 S.Ct. at 1726 (citations omitted). The *Johnson* court points to no "egregious error" committed by this court in *DiNicola.*

**14.** It might surprise the Supreme Court to know that, in *Johnson,* it "implicitly concluded that deference to this court was inappropriate" Majority opinion at 381. In this regard, I am reminded of an apt observation by the Supreme Court:

> Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.

*Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925) (citations omitted).

*Johnson, supra,* 467 U.S. at 939–40, 104 S.Ct. at 2835.

The *Johnson* Court did not recite that the controlling law in the case was the 1928 D.C. Act; the DCWCA was mentioned only once in a cursory footnote,[15] but then the Court proceeded, without further comment, to interpret the language drawn from the underlying LHWCA. At no point did the *Johnson* Court address the possible jurisprudential implications of the DCWCA's status as a local statute.

The *Johnson* Court also gave no indication that it was in fact interpreting the DCWCA by interpreting the identical provisions of the LHWCA. The Court did not discuss the relationship between the 1928 Act and the LHWCA and nowhere did the Court state that "the meaning of relevant provisions of the 1928 Act is [to be] identical to the meanings of the same terms viewed solely as provisions of the [LHWCA]." Majority opinion at 382. In short, the Court in *Johnson* simply did not interpret the 1928 Act.

Perhaps one explanation for the Court's analysis in *Johnson* was the unique overlap of federal and local functions, both administrative and judicial, which until recently existed in the District. For ease of administration, claims for workers' compensation under the DCWCA had been processed by the federal Department of Labor along with those arising under the LHWCA. *See* D.C.Code § 36–503 (1973). Consequently, although it was the application of the DCWCA that was actually at issue in *Johnson,* the petition for review of the compensation order was brought to the United States Court of Appeals for the District of Columbia Circuit, rather than to this court. Given this history, the purely local nature of the governing statute was perhaps somewhat obscured. As a result, the *Johnson* Court did not afford its normal deference to this court because it did not realize that deference was appropriate. The Court viewed the controlling law as the LHWCA not the DCWCA and thus there was no issue of "purely local concern."

### III.

Even a strict interpretation of a statutory provision ofttimes cannot be divorced from the spectre of accompanying facts. I believe that this is what inadvertently happened in *Johnson;* I do not believe that the Supreme Court has interpreted the statutory provisions at issue in the instant case and I do not believe we are constrained by conflicting Supreme Court precedent as a result of *Johnson.*

As to the persuasiveness of the *Johnson* decision in hindsight, I note that the Court initially conceded the existence of an "ambiguity" in the wording of the LHWCA which rendered the scope of immunity for general contractors "unclear." It acknowledged that the immunity language "does not effortlessly embrace" general contractors and that a "slightly strained reading" is required to include them as employers at all. *Johnson, supra,* 467 U.S. at 933–34, 104 S.Ct. at 2832–33. Indeed, the Court very reluctantly departed from its own admonition that in construing the LHWCA " 'the wisest course is to adhere closely to what Congress has written.' " *Id.* at 934, 104 S.Ct. at 2833 (citation omitted). Not only was this an admonition, it was a premonition since *Johnson*'s departure from "the wisest course" was quickly repudiated by Congress:

> The Supreme Court in *Washington Metropolitan Area Transit Authority v. Johnson,* [supra], changed key components of what had widely been regarded as the proper rules governing contractor and subcontractor liability and immunity under the Longshoremen's and Harbor Workers' Compensation Act.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> *WMATA [v. Johnson],* the conferees believe, does not comport with the legislative intent of the Act nor its interpretation from 1927 through 1983. The case

---

**15.** The Supreme Court in footnote 4, refers to the District of Columbia statute: "District of Columbia Code § 36–501 (1973) incorporates the LHWCA, 33 U.S.C. § 901 *et seq.,* to cover employees 'carrying on any employment in the District of Columbia.' " *Johnson, supra,* 467 U.S. at 928 n. 4, 104 S.Ct. at 2829 n. 4.

should not have any precedential effect.[16]

Thus, the Congress confirmed that the reasoning and outcome in *Johnson* did not comport with the philosophy underlying workers' compensation schemes. I might add that general contractor immunity destroys the *quid pro quo* of workers' compensation. *See Meiggs v. Associated Builders*, 545 A.2d 631, 636 (D.C.1988). Nor does general contractor immunity find support in the argument that it is appropriate since the general contractor bears the cost of the subcontractor employer's insurance policy in the form of an increased subcontract price. Basic principles of economics teach that the general contractor does not bear this increased cost; the general contractor simply passes the cost on to whomever is on the other side of the contract. *DiNicola, supra*, 407 A.2d at 674. To apply "ultimate cost" reasoning to support general contractor liability threatens total abolition of an insured workers' statutorily protected right to sue negligent third parties.

The reasoning of *Johnson* would also eliminate the incentive for the general contractor, or intermediate contractors between the general contractor and the actual employer, to avoid hazardous conditions in the workplace. As this court recognized in *DiNicola*, the object of workers' compensation is not served once insurance has been provided, regardless of who purchased it or whether they were under an obligation to do so. Workers' compensation benefits are limited by statute; they are not designed to compensate for all of the damages suffered by the injured employee.

## IV.

Finally, it seems to me that the outcome so tortuously reached by the majority here is patently unfair. Under the federal LHWCA, injured employees are not barred from suing general contractors; Congress amended the LHWCA to overturn *Johnson* almost immediately. Likewise, under the District of Columbia Workers' Compensation Act of 1979,[17] which superseded the 1928 Act, general contractors do not have immunity. *See Meiggs v. Associated Builders, supra*, 545 A.2d at 632. Moreover, if the District of Columbia Council had not passed the 1979 legislation, this issue would not now be before this court. General contractors would not be immune from suit under the federal Act or the local 1928 Act. Congressional amendments to the LHWCA overturning *Johnson* would have applied to the 1928 Act as well. But the District of Columbia Council did pass the 1979 Act repealing the 1928 Act, and so when Congress repudiated *Johnson*, there was no 1928 Act to be amended. *See O'Connell v. Maryland Steel Erectors, Inc., supra*. The majority here accepts the proposition of *O'Connell* that the Congress in 1984 could not have amended an act which no longer existed. Yet it turns to a general savings statute (1 U.S.C. § 109 (1982); July 30, 1947, ch. 388, 61 Stat. 635) to hold that the "terms" of the 1928 Act are preserved as to appellants and that appellants therefore cannot sue WMATA. We are not reminded that the savings statute preserves liabilities "as they then existed" (here in 1982, the date of repeal), *see Keener v. Washington Metropolitan Area Transit Authority*, 255 U.S.App.D.C. 148, 800 F.2d 1173 (1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987), and therefore *before* the Supreme Court's 1984 decision in *Johnson* allegedly interpreting the 1928 Act. There is a certain incongruity in the majority's reasoning that the Congress cannot amend a statute no longer in existence but that the Supreme Court can interpret it. The truth of the matter is that the majority's analysis "creates" a small class of employees who have no judicial redress against general contractors.[18]

16. H.R. CONF. REP. NO. 1027, 98th Cong., 2nd Sess. 24 (1984), *reprinted* in U.S. CODE CONG. & ADMIN. NEWS 2734, 2771, 2774.

17. 27 D.C. Reg. 2503, 2507–08 (1980) (as codified at D.C. Code § 36–301 (1981)).

18. It is an interesting exercise to note that while we have held that the District of Columbia's legislative branch could effectively repeal the congressional 1928 Act, *see O'Connell, supra*, the majority holds today that we, as the District of

It is a little late in the game for the majority to plead that Congress intended the federal act and the local act to be interpreted identically. In the context of time, the majority's decision has the practical effect of reaching exactly the opposite result. Congress has spoken as to the meaning of §§ 4 and 5 of the LHWCA; general contractors do not possess immunity. The majority makes the local act comport not with Congress' understanding of §§ 4 and 5 of the LHWCA but rather with a Supreme Court decision stripped of any "precedential effect."

In short, I am convinced that the Supreme Court in *Johnson* did not interpret the local act. *Johnson* interpreted provisions of the federal act (and that interpretation has been rejected by Congress). If the majority is right, in suggesting that my reasoning constitutes an "end-run," and in holding that *Johnson* squarely presented and necessarily decided the local act, it is puzzling why *Johnson* makes no mention of the repeal of the local act or the savings statute. In my view, therefore, neither *Johnson* nor *Whalen* support the majority's reasoning today that *Johnson* rejected our interpretation of our decision in *DiNicola* as "inappropriate" and that we are prohibited from following *DiNicola*.

For these reasons, I would reverse the grant of summary judgment against the Esteps. I would hold that they might go to trial on their complaint against the general contractor, appellee Construction General, Inc., for negligence resulting in alleged permanent injuries suffered by Samuel Estep.

Columbia's judicial branch, are required to follow an interpretation of the congressional 1928

Act, one repudiated by the Congress.